UNITED STATES of America, Appellant,

v.

Mitchell DIAMOND, Defendant, Appellee.

No. 86–1380.

United States Court of Appeals, First Circuit.

Argued May 6, 1987.

Decided June 1, 1987.

Susan R. Via, Asst. U.S. Atty., with whom Frank L. McNamara, Jr., U.S. Atty., Boston, Mass., was on supplemental brief, for appellant.

David Berman with whom Berman and Moren, Lynn, Mass., was on supplemental brief for defendant, appellee.

Before CAMPBELL, Chief Judge, and COFFIN, BOWNES, BREYER, TORRUELLA and SELYA, Circuit Judges.

COFFIN, Circuit Judge.

This case comes to us on an appeal by the government from a ruling by the district court granting defendant's pretrial motion to suppress thirteen videotapes, other materials, and statements obtained in a search of his residence. The challenged portion of the search warrant authorized the seizure of videotapes "depicting prepubescent children or children under the age of 18 years involved in sexually explicit conduct." The court concluded that the warrant failed to "meet the standard of specificity required when a warrant authorizes seizure of materials which may be protected by the First Amendment," because it impermissibly vested the searching officers with discretion to determine whether the videotapes depicted children under the age of 18. The district court relied especially upon our decision in *United States v. Guarino*, 729 F.2d 864 (1st Cir. 1984), wherein we held that the particularly requirement of the Fourth Amendment[1] was violated by a warrant permitting police to seize "obscene materials of the same tenor as" three named magazines.

A panel of this court affirmed the suppression of the videotapes in a divided opinion, which was subsequently withdrawn when this case was ordered to be considered by the entire court en banc. We now deem the record in this case insufficiently developed to require us to address the particularity issue and remand for further evaluation of the videotapes.

The affidavit presented to the magistrate identified six videotapes which defendant had mailed to government undercover agents. Virtually all of these films were described as depicting "Lolitas" a term the affiant said he knew was "commonly used by pornography collectors and pedophiles to describe prepubescent girls engaged in sexual activity." (Appendix at 9, para. 10.) Two, received by a postal inspector on July 19, 1984, consisted of a "package," one "Lolita" and a "teen tape" (Appendix at 12); two others received the same day were labeled "Lol & Barnyard." The remaining two, received on August 10, 1984, consisted of "the better Lolitas" plus "teens and a few barnyard [bestiality] films." (Appendix at 18.) Throughout the 45 paragraph affidavit defendant is quoted as being interested in acquiring "Lolitas," which he distinguishes repeatedly from "teenage" tapes and films.

After reviewing this affidavit and the six videotapes, the magistrate issued a warrant on December 10, 1984, the relevant section of which (Paragraph C.1) authorized the seizure of

All video tapes and/or 8 millimeter loops or other visual media depicting prepubescent children or children under the age of 18 years involved in sexually explicit conduct—i.e., sexual intercourse, including genital-to-genital, oral-genital, anal-genital, between persons of the same and/or opposite sex; and/or masturbation.

Other portions of the warrant authorized the seizure of equipment used to produce the videotapes referred to in paragraph C.1. and of records and documents related to those videotapes.

Subsequently, on December 11, 1984, ten to fifteen police officers, postal inspectors, and a United States Customs Agent executed the search of defendant's home. (Suppression Hearing at 22.) Portions of the search were recorded on a two-hour videotape. Defendant possessed some 800 videotapes, and it is clear from the record of the suppression hearing that the defendant identified for the searching officers videotapes he thought met the warrant's description. (Suppression Hearing at 31–33.) The videotape shows defendant taking tapes down from the shelves and stacking them. (Suppression Hearing at 52.) The defendant's answers to questions at the Suppression Hearing indicated that he referred to these tapes interchangeably as "child pornography videotapes" (Suppression Hearing at 33) and as "Lolitas" (Sup-

---

1. "... no Warrants shall issue, but ... particularly describing the ... things to be seized."

pression Hearing at 35). All fifteen of the videotapes seized were located in about an hour. The officers then proceeded to view the videotapes and to execute other portions of the search warrant. The entire search took a little over seven hours. (Appendix at 154–57.)

After the search, defendant filed a motion to suppress "all VHS, Beta or other videotapes," along with all books, papers, video recording or playing equipment, and statements obtained during the search. Briefing and oral argument proceeded on an all-or-nothing basis. The court, therefore, did not examine the thirteen tapes that it suppressed.[2]

The question whether a warrant authorizing seizures of films depicting sexual activity by children under 18 violates the particularity requirement of the Fourth Amendment is a significant one of current interest. *United States v. Wiegand*, 812 F.2d 1239 (9th Cir.1987) (upholding warrant authorizing seizure of videotapes "depicting a person under the age of 18 years"). Before pushing to the frontiers of constitutional analysis, however, we think it sound policy to see if a more modest basis for resolving the suppression motion exists. *See Alabama State Federation of Labor v. McAdory*, 325 U.S. 450, 461, 65 S.Ct. 1384, 1389–90, 89 L.Ed. 1725 (1945) (explaining the Court's policy not "to decide any constitutional question in advance of the necessity for its decision, ... or to formulate a rule of constitutional law broader than is required by the precise facts to which it is to be applied"). *See also Rescue Army v. Municipal Court*, 331 U.S. 549, 568–72, 67 S.Ct. 1409, 1419–21, 91 L.Ed. 1666 (1947); *Ashwander v. Tennessee Valley Authority*, 297 U.S. 288, 346, 56 S.Ct. 466, 482, 80 L.Ed. 688 (1936) (Brandeis, J., concurring). We, therefore, resist a rush to judgment.

Both in its supplemental brief in support of rehearing en banc and at oral argument, the government informed this court that each of the thirteen videotapes suppressed by the district court contains at least one

scene involving prepubescent children. If this fact were established by the record, we think it clear that there could be no successful motion to suppress based on improper discretion allowed a seizing officer. The warrant's description of films involving "prepubescent children" provides a relatively objective standard for police officers to follow. Though there might be certain exceptional cases in which mistakes might be made about the signs of puberty in a particular individual, any tapes mistakenly seized under the description "prepubescent children" would most certainly be of individuals under the age of 18: any such tapes would, therefore, be of evidentiary value in a criminal prosecution under the Child Protection Act, 18 U.S.C. § 2252(a). Since the warrant's description of films depicting "prepubescent children" was constitutionally sufficient, such films could be properly seized and admitted into evidence whether or not the additional phrase "children under the age of 18" was particular enough. *United States v. Riggs*, 690 F.2d 298 (1st Cir.1982) (film seized pursuant to valid portion of search warrant was admissible even if other portions of the warrant were invalid).

From our reading of the affidavit and the transcript of the suppression hearing, we think it a substantial possibility that many, if not all, of the seized videotapes included scenes involving prepubescent children. Even if some of the tapes prove to be of apparently pubescent or late teenage young people, and were to be suppressed by the district court, we would assume that the government would seek an appeal only if such tapes were deemed critical to the prosecution. In short, it is possible that there will be no need to face the close question concerning the "children under the age of 18" language.

We, therefore, direct the district court to review the videotapes to see how many are admissible as depicting prepubescent children engaging in the described sexually explicit conduct. If an issue remains con-

---

2. The government returned two of the videotapes which it alleged depicted adult bestiality.

(Appendix at 170.)

cerning videotapes which do not depict pre-pubescent children in such activity, the court, of course, will address that issue. We add that the court should also specifically address those portions of the warrant authorizing the seizure of video equipment and other materials to see if they were drafted with particularity and supported by probable cause.

*The judgment is vacated and the case is remanded for further proceedings consistent with this opinion.*