UNITED STATES of America, Plaintiff-Appellee,

v.

Darnell WILLIAMS, Defendant-Appellant.

No. 86–4679.

United States Court of Appeals, Fifth Circuit.

July 14, 1987.

Rehearing and Rehearing En Banc Denied Aug. 28, 1987.

Steven E. Farese, Farese, Farese & Farese, Ashland, Miss., for defendant-appellant.

John R. Hailman, Asst. U.S. Atty., Glen H. Davidson, Robert O. Whitwell, U.S. Attys., Oxford, Miss., for plaintiff-appellee.

Before WISDOM, HIGGINBOTHAM, and DAVIS, Circuit Judges.

PATRICK E. HIGGINBOTHAM, Circuit Judge:

Darnell Williams appeals from his conviction following a jury trial on three counts of intentionally distributing cocaine in violation of 21 U.S.C. § 841(a)(1). We affirm.

I

In early 1984, Sergeant Shirlene Anderson of the Mississippi Bureau of Narcotics asked Allen Pearson, who had worked undercover for the Drug Enforcement Agency and the Federal Bureau of Investigation since 1980, to infiltrate a ma-

jor cocaine trafficking ring in the Greenville, Mississippi, area. Pearson did so, posing as a small-time drug dealer to gain the trust of the leaders of the ring. He ultimately introduced other MBN undercover agents to the suspects to make actual purchases of narcotics. These purchases led to the convictions of several members of the ring, including Darnell Williams.

On August 18, 1984, Pearson introduced Joyce Chiles, an MBN agent, to Williams. Chiles asked Williams if she could buy some cocaine. Williams instructed Chiles to wait for fifteen minutes. When he returned, Williams sold Chiles three and one-half grams of cocaine for $350.

Ten days later, Chiles returned with Pearson to make another purchase. This time, Chiles, who was wearing a radio transmitter, went to Williams's house. Anderson attempted to monitor the proceedings over the transmitter, but could not because the distance was too great. As before, Chiles purchased three and one-half grams of cocaine from Williams for $350.

Chiles and Pearson returned about one week later. Anderson attempted to monitor the proceedings again, but, as before, was too far away. Anderson did, however, see Pearson enter Williams's house and return to his car soon afterwards accompanied by Williams. Chiles purchased seven grams of cocaine from Williams this time for $650.

The MBN agents met after the close of this sale. Chiles gave Anderson the package purchased from Williams, later identified as containing fifty-eight percent pure cocaine.

A federal grand jury indicted Williams on three counts, charging intentional distribution of cocaine in violation of 21 U.S.C. § 841(a)(1). The jury convicted him on all three counts. Williams appeals, contending that the prosecutor excluded black veniremen with peremptory challenges in violation of his equal protection rights, that the district court abused its discretion by permitting three government witnesses to state their opinions about Williams's and defense witness Leonard's reputations for truthfulness, that the district court improperly limited Williams's cross-examination of an important government witness, that the district court improperly detained Williams pending this appeal, and that the district court improperly denied Williams's motion for new trial based on the prosecutor's improper jury argument. We treat each contention in turn, explaining its lack of merit.

## II

Williams first argues that the prosecutor's use of peremptory challenges against black members of the venire violated his equal protection rights.[1] *See Batson v. Kentucky*, 476 U.S. 79, 106 S.Ct. 1712, 1717, 90 L.Ed.2d 69 (1986); *see also United States v. Forbes*, 816 F.2d 1006, 1009 n. 6 (5th Cir.1987) (the equal protection analysis of *Batson* applies to federal prosecutions through the fifth amendment). To establish an equal protection violation, the defendant must first "show that he is a member of a cognizable racial group ... and that the prosecutor has exercised peremptory challenges to remove from the venire members of the defendant's race." *Batson*, 106 S.Ct. at 1723 (citation omitted). The defendant may then rely on the fact that peremptory challenges may disguise racial discrimination, but must "raise an inference that the prosecutor used [the peremptory challenges] to exclude the veniremen from the petit jury on account of their race." *Id.* Once this inference has been

---

**1.** Williams also claims that the district court improperly denied two challenges for cause and that this affected his use of his peremptory challenges. However, the district court concluded that dismissals for cause were not proper in either case because each juror testified that he could act fairly and impartially. Without a finding of bias, there was no basis for a challenge for cause.

Moreover, no harm resulted because neither juror served on Williams's jury and Williams did not have to use all of his peremptory challenges. Williams later excluded one by way of peremptory challenge; the other was excluded for cause when he voluntarily revealed that he had worked for the Mississippi Department of Corrections.

raised, the burden shifts to the prosecutor to articulate a racially-neutral explanation of the exclusion of that venireman that is related to the particular case to be tried. *Id.* "The prosecutor's explanation[, however,] need not rise to the level justifying exercise of a challenge for cause." *Id.*

### A

There were thirty-five persons on the venire, seven of them black. Five white jurors were excused for cause. The prosecution then used four peremptory challenges to strike black veniremen, and one to strike a white venireman. The resulting jury was composed of three blacks and nine whites. The ratio of blacks on the jury— one in four—was actually higher than that on the venire—one in five.

When the prosecutor used his first three peremptory challenges to exclude black veniremen, Williams's counsel objected, stating: "[T]he three challenges made by the government are all against black jurors and ... the defendant in this case is black.... [W]e feel that they're being excused solely because of their race." The prosecutor then explained why he had struck the three black veniremen. The first not only lived in Tippah County, where defendant's counsel is well known,[2] but was also regarded by law enforcement officials in Tippah County as a poor juror for a drug case. The second had been previously arrested by a government witness and was reputed to use narcotics, and the third was regarded by law enforcement officials in his community as a poor juror for a drug case. In neither instance in which law enforcement officials adjudged the veniremen to be "poor" jurors did the officials know the race of the defendant at the time the opinion was given.

The district court found these to be legitimate non-discriminatory reasons for excluding the three blacks, informed in its judgment by the fact that the prosecutor accepted two blacks as jurors in the initial twelve. The defense then challenged five members of the proposed panel. The prosecutor in response used a peremptory challenge to strike a white juror because she lived in Benton County where defendant's counsel is also well known. After the defense challenged three more jurors, the prosecutor accepted one black juror and excluded another with the use of its fifth peremptory challenge. When questioned by defense counsel, the prosecutor noted that law enforcement officials in this venireman's community felt that she would be a poor juror for a drug case. Again, these officials were not told the race of the defendant until after they had given their opinion. No formal objection was raised to this challenge.

### B

We review the district court's finding of no discrimination under Fed.R.Civ.P. 52(a). *See Forbes*, 816 F.2d at 1011. And since the district court's rulings in such contexts largely turn on evaluations of credibility, the *Batson* court instructs us to give such findings great deference. 106 S.Ct. at 1724 n. 21.

■ There is no basis for upsetting the district court's findings of no discrimination. The prosecutor offered legitimate, non-discriminatory explanations for striking each venireman. While two of the jurors were excluded only because law enforcement officials advised the prosecutors that they would not be "good" jurors, and we have paused at the potential of generalized objections for the masking of bias, the decision to strike these jurors seems unlikely to have been the result of intentional discrimination. The prosecutor assured the district court that the law enforcement officials did not know the race of the defendant at the time the opinions were given. And the confluence of the following facts supports the district court's finding: (1) the black to white ratio on the jury exceeded that of the venire; (2) the prosecutor did not use all of his strikes; (3) three blacks were on the jury; and (4) the prosecutor

---

**2.** For example, one magazine article, W.H. Sides, *Sad Songs from the Hills—The Violent End of a Teenage Romance,* Memphis Mag. 90, 102 (Dec. 1985), described defendant's counsel as "the closest thing northern Mississippi had to a William Jennings Bryan."

adequately explained three strikes. Finally, most of the government's witnesses were black. Accordingly, we find no clear error.

■ Williams also claims that three black jurors were deleted from the original venire list without explanation. However, defendant made no record on this issue below. He therefore did not preserve the issue for appeal. In any event, we iterate that intentional discrimination is unlikely. The fact remains that the prosecutor accepted a jury comprised of 25% blacks, a figure higher than that of the venire, and did not use all of his strikes.

### III

Williams next contends that the district court erred by allowing two government agents—Joe Hart and John Canale—to testify about Williams's bad reputation for truthfulness, arguing that the prosecutor did not establish the underlying basis for those opinions.[3] But defense counsel did not object to this testimony at trial on these grounds. Instead, defense counsel objected only that "[w]e have not put his character in issue on truthfulness and veracity." This objection was properly overruled, since Williams testified at trial. By testifying, Williams put his character for truthfulness in issue. *See* Fed.R.Evid. 608(a).[4]

Because Williams asserts on appeal an objection which he failed to raise below, we review the alleged error under the plain error standard. *United States v. Montemayor*, 684 F.2d 1118, 1121 (5th Cir.1982). We ask only if the alleged error is "one which is so obvious that the failure to notice it would seriously affect the fairness, the integrity or the public reputation of judicial proceedings." *United States v. DeRoche*, 726 F.2d 1025, 1028 n. 3 (5th Cir.1984). The burden of proving plain er-

ror is a heavy one; not even obvious, basic errors justify reversal if they are harmless. *Montemayor*, 684 F.2d at 1124.

■ In *United States v. Dotson*, 799 F.2d 189, 193 (5th Cir.1986), we held such opinion testimony of investigative officers admissible when supported by a proper predicate. Because the defendant did not object to the predicate provided below, the prosecutor was not required to bolster that predicate by determining the full extent of each agent's knowledge. Since each agent worked in the Greenville, Mississippi, area and investigated Williams extensively, both by surveillance and by interrogation of others, that more could have been provided is at the least plausible. Accordingly, we cannot say that the district court's decision to admit this testimony is plain error.

### IV

Williams argues that the district court violated his sixth amendment confrontation right by improperly restricting his cross-examination of government informant Pearson. "Control over the conduct of a trial, including the scope of permissible cross-examination, is squarely within the discretionary powers of the district court, and its rulings will be disturbed on review only if the district court abuses that discretion." *United States v. Viera*, 819 F.2d 498, 500 (5th Cir.1987).

On cross-examination, Pearson denied that he ever sold drugs to anyone. Defendant's counsel attempted to impeach Pearson on that issue, but was not allowed to do so because Pearson had never been indicted for, arrested for, or convicted for the use of drugs. The district court ruled that Williams could not impeach Pearson on this collateral matter, since it was not probative of Pearson's truthfulness. *See* Fed.R.Evid. 608(b); *see also Crimm v. Missouri Pacific Railroad*, 750 F.2d 703, 707–

---

**3.** Williams raises a similar objection on appeal to the testimony of Sergeant Anderson, which reflected her opinion that defense witness Leonard was untruthful. Again, Williams did not object to the foundation of Anderson's testimony, but only objected generally. We find no plain error here.

**4.** This case is therefore distinguishable from *United States v. Dotson*, 799 F.2d 189, 192 (5th Cir.1986), in which we held full appellate review proper because the trial judge improperly cut short the defendant's objection challenging generally the predicate for the opinion testimony.

708 (8th Cir.1984) (illegal drug use or transactions, without more, do not show untruthfulness). The district court may under Rule 608(b) determine if evidence is probative of truthfulness, and under Rule 403 exclude even probative evidence if the prejudicial effect outweighs the probative value.

■ Williams does not argue that the evidence was necessary to show bias on the part of Pearson, but only to question his credibility and "his ability to have been rational during the key time period." But Williams's counsel was allowed to question Pearson about his drug use. And defense witness Christine Butler was permitted to testify that she saw Pearson use cocaine, that he used it three times a week, that he offered her cocaine on several occasions, and that they used cocaine together once. Because whether or not Pearson ever sold drugs is not probative of his truthfulness, the district court did not abuse its discretion in restricting this cross-examination.

## V

■ Williams also argues that the district court erred by denying him bail pending appeal. But Williams had no constitutional right to bail after his conviction and sentencing. *See United States v. Bright*, 541 F.2d 471, 477 (5th Cir.1976), *cert. denied*, 430 U.S. 935, 97 S.Ct. 1560, 51 L.Ed.2d 780 (1977). And 18 U.S.C. § 3143(b) establishes a presumption against the grant of such bail. Thus, the burden is on the defendant to prove by clear and convincing evidence:

(1) that the defendant is not likely to flee or pose a danger to the safety of any other person or the community if released;

(2) that the appeal is not for the purpose of delay;

(3) that the appeal raises a substantial question of law or fact; and

(4) that if that substantial question is determined favorably to defendant on appeal, that decision is likely to result in reversal or an order for a new trial of all counts on which imprisonment has been imposed.

*United States v. Valera-Elizondo*, 761 F.2d 1020, 1025 (5th Cir.1985) (citations omitted). The district court's findings of fact and conclusions of law were stated orally at Williams's hearing. *See United States v. Fields*, 466 F.2d 119, 121 (2d Cir.1972) (although Fed.R.App.P. 9 requires the district court to state in writing its reasons for denying bail pending appeal, it is sufficient if the district court states its reasons on the record and recorded in the transcript). Accordingly, because Williams omitted the transcript of the hearing from the record, we have no basis on which to review the district court's denial of bail.

In any event, because we affirm Williams's conviction, the question whether the district court erred in denying Williams release pending this appeal is moot.

## VI

Finally, Williams also argues that the prosecutor's closing statement was inflammatory and prejudicial.

At closing argument, the following exchange occurred:

*Prosecutor:* Now, he said I should apologize for saying those were tricks. There is no reason to apologize. They say this is strategy. It's typical strategy. This is one trial I have to commend [defense counsel]. He didn't cry in front of the jury. He didn't get down and cry.

*Defense:* Your Honor, I object to that.

*Court:* Sustained.

*Prosecutor:* But those are all typical strategies. That's what they are. They're strategies. They're ways to get your mind off the evidence. Talking about the Bible. He wants me to get up, I guess, and answer—and disagree with him. The Fourth of July. He wants me to get up and disagree about the Fourth of July? I tell you this. He doesn't love America any more than I do. And the Fourth of July doesn't mean any more to him than it does to you ladies and gentle-

men, every one of us. What America stands for is freedom, and one of the freedoms I think that we're entitled to, you and me and every other American, is the freedom from drugs. We don't need these pushers out on the streets selling drugs and corrupting our children. That is just as important a freedom as all of the freedoms that Mr. Williams has. And you see the kind of freedoms that Mr. Williams has. He has fine lawyers. He can afford fine lawyers.

*Defense:* Now, Your Honor, we object to that.

*Court:* Sustained.

Counsel is allowed wide latitude in closing arguments, and deference is due the district court's determination of whether those arguments are prejudicial and inflammatory.

■ We are unpersuaded that the defendant suffered substantial prejudice. Williams's contemporaneous objections were sustained. Williams did not request a curative instruction, nor did he seek a mistrial. The district court did not abuse its discretion by refusing to grant Williams's motion for a new trial.

Moreover, the prosecutor's reference to Williams's ability to hire fine lawyers was in response to defense counsel's own argument that the trial presented "the might and weight of the United States government, with all of its FBI agents, all of its DEA agents, and all of its funds, F–U–N–D–S, which spells money, M–O–N–E–Y, against Darnell Williams with two lawyers from Ashland, Mississippi, a town with 500 people. Now you know that's an uneven contest." Although the prosecution was entitled to make a fair response in rebuttal, *see United States v. Nanez,* 694 F.2d 405, 410 (5th Cir.1982), *cert. denied,* 461 U.S. 909, 103 S.Ct. 1884, 76 L.Ed.2d 813 (1983), the district court sustained defendant's objections, stating, "Two wrongs don't necessarily make a right." In any event, even if the prosecutor's comments were improper, we are persuaded that Williams's rights were not substantially prejudiced, since his contemporaneous objections were sustained.

## VII

The judgment of the district court is AFFIRMED.