UNITED STATES of America,
Plaintiff–Appellee,

v.

John Pershing PEDEN, Jr.,
Defendant–Appellant.

No. 89–2046
Summary Calendar.

United States Court of Appeals,
Fifth Circuit.

Dec. 20, 1989.

Charles Rice Young (court-appointed), Houston, Tex., for defendant-appellant.

Paula C. Offenhauser, Asst. U.S. Atty., Henry K. Oncken, U.S. Atty., Scott Behnke, Asst. U.S. Atty., Houston, Tex., for plaintiff-appellee.

Before POLITZ, GARWOOD, and JOLLY, Circuit Judges.

GARWOOD, Circuit Judge:

Defendant-appellant John Pershing Peden, Jr. (Peden) conditionally pleaded guilty to one count of receiving child pornography by mail in violation of 18 U.S.C. § 2252(a)(1), preserving the right to appeal the district court's denial of his motion to suppress evidence discovered in a search of his home. In addition to that challenge, Peden now appeals the decisions of the district court not to grant a continuance before sentencing and not to release him on bond pending his appeal. We affirm.

### Facts and Proceedings Below

On August 15, 1985, a United States Customs Inspector conducted a routine border search of the contents of an envelope addressed to Johnny Peden, 3256 Windchase Boulevard, in Houston, Texas.[1] The envelope had arrived at Houston Intercontinental Airport from the Netherlands via international mail. Inside was a magazine entitled "Dream Boy," which contained visual depictions of young boys engaged in various sexual acts. The Customs Service determined that the magazine was child pornography and seized it.

Later investigation revealed that John Pershing Peden, Jr. was currently receiving mail and utility service at 3256 Windchase Boulevard, and that two other pornographic magazines mailed internationally to "Johnny Peden" at the same address had been seized by the Customs Service in New York in May 1985.[2] The Customs Service mailed Peden notice of each seizure. In addition, investigators learned that Peden had been convicted in Tarrant County, Texas in 1979 for solicitation of a minor to enter a vehicle with intent to engage in sexual contact.[3]

---

1. Peden does not challenge the propriety of this search.

2. One of the magazines, entitled "Nature Boys #2," also contained pornographic depictions of male children. The other, entitled "Piss Sex," depicted adults performing sex acts that involved urination. The former magazine was seized May 14, the latter May 29 (there is some uncertainty in the record as to the date of the second seizure; it may have been June 24, 1985).

3. Peden was sentenced to the maximum penalty of twelve months' imprisonment and a $2,000 fine for this conviction, but was released on bond pending appeal. His conviction ultimately was affirmed, but he never returned to Tarrant County to serve his sentence. At the time of the present investigation, a warrant for his arrest was outstanding in Fort Worth.

Based on this information, the Customs Service decided to arrange a controlled delivery of the "Dream Boys" magazine to Peden at the Windchase Boulevard address, and to prosecute him for receipt of child pornography through the mail. On August 22, Customs Service Special Agent Marcy M. Forman (Agent Forman) executed before a United States magistrate an affidavit detailing how the "Dream Boy" issue was found by the Customs Service and that it contained pictures of minors engaged in sexually explicit conduct, the other results of the investigation, and the plans for the controlled delivery of "Dream Boy." In addition, based on her experience investigating pedophiles and the sexual exploitation of children, Agent Forman's affidavit asserted that pedophiles often maintain certain other types of materials: large collections of books, magazines, videos, and films containing child pornography; the addresses of and correspondence with other pedophiles; and supplier lists, order forms, and other documents pertaining to the purchasing, ordering, and advertising of child pornography. Relying on the affidavit (and a Xerox copy of the "Dream Boy" issue in question, also presented to the magistrate by Agent Forman), the magistrate issued a warrant authorizing investigators to search Peden's residence for these materials and for Customs Service seizure notifications for the two previous seizures of child pornography addressed to Peden.

On August 23, the controlled delivery took place. After Peden collected his mail that day and entered his home at the Windchase Boulevard address, the investigators, led by Agent Forman, executed the warrant. In addition to the "Dream Boy" magazine and its mailing wrapper, the officers discovered and seized several magazines, videos, and films containing child pornography; correspondence from other pedophiles; photographs and videos of Peden with various young boys (some of whom were nude or engaged in sexual acts); advertising, catalogs, and order blanks for child pornography (including "Dream Boy"); the Customs Service's notifications of the mentioned New York seizures; and newsletters related to the subject of pederasty.

On January 12, 1988, Peden was charged with one count of receipt by mail of child pornography in violation of 18 U.S.C. § 2252(a)(2) (Count I), one count of use of mails for delivery of obscene matter in violation of 18 U.S.C. § 1461 (Count II), and one count of importation of obscene matter in violation of 18 U.S.C. § 1462 (Count III). Following evidentiary hearings, the magistrate on July 22, 1988 recommended denial of Peden's motion to suppress the evidence seized in the search of his home, and on October 14, the district court adopted the magistrate's report and denied the motion. On November 18, Peden conditionally pleaded guilty to Count I, reserving the right to appeal the district court's decision on the motion to suppress. The remaining counts were dismissed pursuant to a plea agreement.

Some time between July 1988 and the November 18 guilty plea, on the advice of his attorney, Peden sought psychiatric care from the Baylor College of Medicine Department of Psychiatry Sex Offenders Program. He was eventually assigned to Dr. Michael Dennis Cox (Dr. Cox) for therapy and saw him on November 1, 1988. By coincidence, Dr. Cox had testified for the government as an expert on pedophilia in a May 11, 1988 hearing on one of Peden's various pretrial motions. Peden disclosed in open court that he was consulting with "Dr. Michael Cox at Baylor College of Medicine" during the November 18 hearing on his guilty plea, and subsequently consulted with him on November 30, 1988 but, apparently, his attorneys failed to notice this connection despite the fact that they had extensively cross-examined Dr. Cox at the May 11 hearing.

On November 18, the court scheduled sentencing for December 30. When the probation department prepared its presentence report, Peden disclosed that he had seen Dr. Cox, and the probation officer accordingly consulted Dr. Cox for a recommendation as to the appropriate sentence and necessary treatment for Peden. Dr. Cox's professional opinion was that Peden's

condition could be treated with extensive therapy, but he recommended against probation. All of this was incorporated into the presentence report. The district court found that that report was available for review by Peden's attorneys on December 21, but they were apparently unaware of this and did not procure it until the day of sentencing. When they discovered that, as reflected in the presentence report, Dr. Cox had recommended against probation, they asked for a continuance to consult an additional expert on the issue of whether probation was appropriate. The district court denied the motion, sentenced Peden to serve a six-year prison term on Count I, and denied his request for release on bond pending this appeal.

### Discussion

#### I. *Denial of Motion to Suppress*

Peden's primary contention on appeal challenges the validity of the warrant for the search of his home. He argues first that the warrant failed to describe with particularity the items to be seized, and second that it was not supported by probable cause. We conclude that neither of these challenges require exclusion of the fruits of the search.

#### A. *General warrant*

■ Peden correctly asserts that warrants must particularly describe the things to be seized, and that the Fourth Amendment prohibits general warrants authorizing officials to rummage through a person's possessions looking for any evidence of crime. *E.g., Lo–Ji Sales, Inc. v. New York*, 442 U.S. 319, 99 S.Ct. 2319, 60 L.Ed.2d 920 (1979). Specificity is especially important when the warrant authorizes seizure of books on the basis of the ideas they contain. *Stanford v. Texas*, 379 U.S. 476, 85 S.Ct. 506, 511–12, 13 L.Ed.2d 431 (1965) (holding that the particularity requirement "is to be accorded the most scrupulous exactitude" in such cases). Nonetheless,

the search warrant in the instant case is sufficiently specific to satisfy these constitutional requirements.

That warrant authorized seizure of:

"evidence, fruits and instrumentalities of violations of Title 18, United States Code, Sections 1461, 1462, and 2252, including, in particular, visual depictions of minors engaging in sexually explicit conduct, as those terms are defined in Title 18, United States Code, Section 2255(2)(E), to-wit: the actual or simulated lascivious exhibition of the genitals or pubic area of said minors (hereinafter called child pornography) including, but not limited to various books, magazines, films, and videos containing the visual depiction of minors engaging in sexually explicit conduct; books, magazines, films and videos depicting child pornography; envelopes, letters, and other correspondence constituting orders to buy, offers to sell or trade [s]uch child pornography; address books; mailing lists; supplier lists and other documents or records pertaining to the producing, selling, trading, purchasing, ordering and advertising of child pornography; and United States Customs Service seizure notifications relative to previous seizures of child pornography."

Thus, the warrant is very specific in its limiting language. It authorized the seizure only of materials containing visual depictions of minors engaged in sexually explicit conduct,[4] and of specific types of documents related to the mail order acquisition and Customs Service seizure of such material.

Other circuits have determined that search warrants describing the things to be seized with very similar language did comply with the Fourth Amendment particularity requirement. *E.g., United States v. Dornhofer*, 859 F.2d 1195, 1198 (4th Cir. 1988) (approving warrant that authorized seizure of "[v]arious books, magazines, photographs, negatives, films and/or video cassettes depicting minors engaged in sex-

---

**4.** Such visual depictions are not protected by the free speech clause of the First Amendment. *New York v. Ferber,* 458 U.S. 747, 102 S.Ct. 3348, 3358, 73 L.Ed.2d 1113 (1982). Because the war-

rant's description of the expressive material to be seized is specifically limited in this way, it meets the "scrupulous exactitude" standard established in *Stanford v. Texas, supra.*

ually explicit conduct as defined in 18 U.S.C. 2256"); *United States v. Rabe,* 848 F.2d 994, 997–98 (9th Cir.1988) (approving warrant that authorized seizure of "materials 'depicting minors engaged in sexually explicit conduct as those terms are defined in 18 U.S.C. 2255' and documents that would serve as evidence of 'the purchase, sale or trade of sexually explicit depictions of minors'"). *Cf. United States v. Diamond,* 820 F.2d 10, 12 (1st Cir.1987) (holding that warrant for seizure of depictions of "prepubescent children" engaging in sexual acts was sufficiently particular, but declining to decide whether similar depictions of "children under 18" would be).

Following the Fourth and Ninth Circuits, we conclude that the search warrant in the instant case leaves little doubt as to the type of material to be seized, and provides the searching officers with a sufficiently objective standard to follow in conducting the search. Peden's reliance to the contrary on *Lo–Ji Sales, supra,* is misguided. That case involved a warrant in which the list of specific materials to be seized was left blank, and was filled in during the course of the search by the issuing magistrate who actively participated in the search. Thus, the warrant in *Lo–Ji Sales* was literally an open-ended general warrant. That is not the case here. Thus, we hold that the warrant's description of the things to be seized from Peden's home is sufficiently specific to meet the particularity requirements of the Fourth Amendment.[5]

### B. *Probable cause*

■ Peden also claims that the search warrant was not based on an adequate showing of probable cause. His brief states that "[t]he Defendant concedes that the affidavit in support of the issuance of the search warrant states probable cause as to the magazine 'Dream Boy'" that was

the subject of the Postal Inspector's controlled delivery, but asserts that, "[n]otwithstanding the existence of probable cause for the potential seizure of 'Dream Boy,'" no probable cause existed to believe that other media containing child pornography or related materials would also be present in his home.

In determining whether probable cause exists to order a search, a magistrate "is simply to make a practical common-sense decision whether, given all the circumstances set forth in the affidavit before him … there is a fair probability that contraband or evidence of a crime will be found in a particular place." *United States v. Jackson,* 818 F.2d 345, 348 (5th Cir.1987) (quoting *Illinois v. Gates,* 462 U.S. 213, 103 S.Ct. 2317, 2332, 76 L.Ed.2d 527 (1983)). In this case, the magistrate relied upon a very detailed affidavit sworn to by Agent Forman of the Customs Service. That affidavit described the results of the investigation into Peden's background, including the facts that two prior pornographic magazines (one of child pornography) addressed to him had been seized from the international mails a few months previously (and Peden had been notified of the seizures) and that Peden had been convicted in Fort Worth of soliciting a male child to engage in sexual contact. The magistrate was also presented with Agent Forman's testimony, based on her substantial training and experience, that pedophiles often collect large quantities of certain types of child pornography, and that they correspond with other pedophiles on the subject.[6] Although the affidavit lacked direct testimony that Peden himself was this type of compulsive pedophile, the magistrate might reasonably draw such a common-sense conclusion from the repeated documented instances of Peden's sexual interest in young boys. If she did draw this conclusion, then the magis-

---

**5.** Peden also claims that the words in the search warrant referring to the affidavit (the warrant reflects on its face that it is based on the affidavit of "Marcy M. Forman") are insufficient to incorporate it, and that therefore the court cannot look to the affidavit in determining whether the items to be seized are described with sufficient particularity. Because we have decided

that the description in the warrant itself was sufficiently particular, we need not reach this issue.

**6.** The accuracy of these statements was subsequently corroborated by Dr. Cox's testimony at the May 1988 motion *in limine* hearing.

trate could also logically conclude that there was a fair probability that Peden maintained a collection in his home of the type of materials described in the affidavit.

We need not reach that issue, however, because the fruits of this search are admissible under the good-faith exception of *United States v. Leon*, 468 U.S. 897, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984). *See United States v. Craig*, 861 F.2d 818, 820 (5th Cir.1988). Agent Forman testified that she had no reason to believe that the warrant was improperly issued and that there was nothing in her training or experience to make her suspect that it should not have been issued. Nothing in the record suggests the contrary. The magistrate trying the suppression issue (a different magistrate from the one who issued the warrant) and the district court concluded that the warrant was properly issued. Evidence obtained by law enforcement officials acting in objectively reasonable, good-faith reliance upon a search warrant issued by a neutral magistrate is admissible, even if the affidavit on which the warrant was based was insufficient to establish probable cause. *United States v. Craig*, 861 F.2d at 821. There is no indication here that the affidavit contains any false statements (much less ones knowingly or recklessly false) or that the magistrate abandoned her neutral and detached function. Similarly, the affidavit is not "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable." *Id.* We conclude that the investigating officers did reasonably rely in good faith on a facially valid warrant issued by a neutral and detached magistrate. The fruits of the search of Peden's home are therefore not subject to the exclusionary rule.

II. *Denial of Continuance Prior to Sentencing*

█ Next, Peden challenges the district court's refusal to grant him a continuance at sentencing. He claims that he was prejudiced by his psychiatrist's prior status as a government witness, and requested additional time to locate a second psychiatrist who might recommend a more lenient sentence. To prevail on this appeal, he must

demonstrate that the district abused its discretion, *e.g., United States v. Alexander*, 869 F.2d 808, 811 (5th Cir.1989), and that he suffered prejudice. *E.g., United States v. Houde*, 596 F.2d 696, 701 (5th Cir.1979).

The record indicates that Dr. Cox testified for the government as an expert on pedophilia during a pretrial hearing on May 11, 1988. Peden was initially present, but at his request was excused to attend a business meeting just prior to the beginning of Dr. Cox's testimony. Before Peden was excused, the government had announced on the record that it would be presenting extensive testimony from its witness "a Dr. Cox." Peden's attorneys were present throughout the testimony and extensively cross-examined Dr. Cox. Dr. Cox's testimony purported to be in large part based on his experience in the program of the Baylor Medical Center at which Peden later sought counseling. Before Peden went to Baylor Medical Center at the suggestion of his attorneys, his attorneys discussed with him what transpired at the May 11 hearing, although they apparently did not specifically identify Dr. Cox as having testified at it. Several months later, when Peden sought psychiatric care from this program of the Baylor Medical Center, he was assigned to the same Dr. Cox. He first consulted with Dr. Cox on November 1, 1988. He disclosed this fact in open court (and obviously in the presence of his attorneys) at his sentencing on November 18. He then met with Dr. Cox again on November 30. It was not until December 30, the day of sentencing, that either Peden or his attorneys displayed any concern for the fact that the doctor had testified as an expert for the government in the May 11 hearing. The objection, so far as we can discern from the briefs and record, suddenly arose when they learned that Dr. Cox had recommended against probation for Peden to the officer preparing the presentence report.

Dr. Cox's status as a prior witness for the government was on the record and should have been apparent to all concerned throughout this episode. There is nothing

to suggest that when he saw Peden Dr. Cox knew or should have known that Peden did not know that Dr. Cox had previously testified for the government in this case. Peden admitted at sentencing that before his second (and last) visit to Dr. Cox on November 30 he knew Dr. Cox had earlier testified for the government in his case (although Peden claimed he did not realize this when he saw Dr. Cox November 1). Indeed, it is evident that Peden knew this at least since his guilty plea hearing or shortly thereafter. If Peden suffered any prejudice as a result of this prior relationship (which is doubtful), that prejudice would seem to be the result of a simple lack of diligence on his part and the part of his attorneys. As such, we cannot say that the district court abused its discretion in refusing to grant the requested continuance.

### III. *Denial of Appeal Bond*

■ Finally, Peden challenges the decision of the district court not to release him on bond pending his appeal pursuant to 18 U.S.C. § 3143(b). To obtain bond under that section, the defendant must prove by clear and convincing evidence, among other things, that he is not likely to pose a danger to any other person or to the community if he is released. *United States v. Williams*, 822 F.2d 512, 517 (5th Cir.1987); *United States v. Valera-Elizondo*, 761 F.2d 1020, 1025 (5th Cir.1985).

In ruling on Peden's motion for release on bond, the district court noted Dr. Cox's opinion that Peden was a compulsive pedophile in immediate need of intensive psychiatric care, without which his obsessive behavior might well pose a risk to others and to the community. The court did not accept Peden's assertion to the contrary as sufficient to prove the matter by clear and convincing evidence, and therefore refused bond.[7] Based on the record, we cannot say that this finding was clearly erroneous. Even if it were, Peden would not be entitled to relief, as our decision to affirm his

conviction moots the issue. *See United States v. Williams*, 822 F.2d at 517.

### Conclusion

Accordingly, the conviction and sentence are

AFFIRMED.

---

**7.** The district court also concluded that Peden had not shown that his appeal would raise a substantial question of law or fact, as is also required for bond on appeal. *Williams* at 517.