UNITED STATES of America

v.

Maria Guadalupe HERNANDEZ, Defendant.

EP–15–CR–1334–PRM–1

United States District Court, W.D. Texas, El Paso Division.

Signed December 20, 2016

James Christopher Skillern, U.S. Attorney's Office, El Paso, TX, for United States of America.

## ORDER DENYING MOTION TO CONTINUE ON BOND PENDING APPEAL

PHILIP R. MARTINEZ, UNITED STATES DISTRICT JUDGE

On this day, the Court considered Defendant Maria Guadalupe Hernandez's "Opposed Motion to Continue on Bond Pending Appeal" (ECF No. 156) [hereinafter "Motion"], filed on November 22, 2016, and the United States of America's ("the Government") "Response to Defendant's Opposed Motion to Continue on Bond Pending Appeal" (ECF No. 157), filed on November 23, 2016, in the above-captioned cause. In her Motion, Defendant Hernandez requests that the Court allow her to continue on bond pending the resolution of her appeal pursuant to 18 U.S.C. § 3143. Mot. 1. After due consideration, the Court is of the opinion that Defendant Hernandez's Motion should be denied.

## I. BACKGROUND

A grand jury returned an eleven-count indictment against Defendant Hernandez and co–Defendant Hilda Simental Mendoza in early August of 2015, charging them with bank fraud, conspiracy to commit bank fraud, wire fraud, and conspiracy to commit wire fraud. Indictment 1, Aug. 12, 2015, ECF No. 6. Defendants pleaded guilty to the indictment before a Magistrate Judge in late May of 2016. Order R. & R. Mag. Judge upon Def.'s Plea of Guilty 1–3, May 24, 2016, ECF No. 73. The Court accepted the plea shortly thereafter. Order Approving and Adopting R. & R. and Order Setting Sentencing, May 31, 2016, ECF No. 74.

The Court made the following factual findings based on (1) the factual basis the Government recited during Defendants' plea hearing—which both Defendants affirmed was correct under oath; (2) the Presentence Investigation Report ("PSR")—which the Court has concluded bears the required indicia of reliability and which it adopted; and (3) the evidence presented during the evidentiary hearing.[1]

Defendants were employees of the El Paso Federal Credit Union ("EPFCU") when they engaged in the criminal activity alleged in the indictment: Defendant Hernandez was the manager and co–Defen-

---

1. The Court conducted the evidentiary hearing on September 7, 2016.

dant Simental Mendoza was the co-manager. EPFCU was a credit union federally chartered and insured by the National Credit Union Administration ("NCUA").

In September 2011, NCUA examiners detected irregularities in the amount of EPFCU's undivided earnings. The Government conducted an investigation from which it ultimately determined that Defendants had formed a complex criminal scheme during their employment at EPFCU.

Essentially, Defendants sold share certificates,[2] would not record the sales in the EPFCU's general ledger, and then would misapply the funds generated from the sales. The purchasers of the unrecorded share certificates would pay for the certificates by means of interstate wire transfers from the purchasing institution's account to the EPFCU's Federal Reserve Account. From there, Defendants would wire the proceeds to deceased members' accounts, dormant accounts, accounts that Defendant Hernandez opened in her family members' names, and an account at Capital Bank that Defendant Hernandez controlled. Each share certificate requires the payment of regular dividend payments to the purchaser. Defendants acquired the funds for the dividend and interest payments from deceased or dormant member accounts. Consequently, Defendants used the funds generated from previously purchased unrecorded share certificates to make dividend and interest payments for recently purchased unrecorded share certificates—akin to a Ponzi scheme. Moreover, Defendant Hernandez diverted a portion of the sales generated from the unrecorded share cer-

tificates for personal use to fund trips for her and her family to Las Vegas and Disneyland and to purchase real estate. The Government determined through the investigation that Defendants sold a total of at least 112 unrecorded share certificates.

Defendant Hernandez also made fraudulent financial Federal Reserve statements and submitted fraudulent reports to the NCUA[3] to conceal the Defendants' scheme. Defendant Hernandez misrepresented EPFCU's financial condition on several occasions. Moreover, Defendants' scheme led to the insolvency of the credit union. As a result of the fraudulent scheme, the NCUA paid $18,376,542 in claims from purchasers of the unrecorded share certificates that Defendants sold between August 14, 2007, and September 14, 2012, because the credit union did not have the assets to pay for these share certificates.

The Court subsequently sentenced Defendant to a term of 188 months' imprisonment, followed by five years' supervised release, and imposed a $10,000 fine, a $1,100 special assessment, and ordered restitution in the amount of $18,376,542.00. J. in a Criminal Case, Sep. 30, 2016, ECF No. 112 [hereinafter "Judgment"].

During the sentencing hearing, the Court determined that a twenty-level enhancement to Defendant Hernandez's Offense Level was warranted. Namely, as outlined above, the Court concluded that the Defendants' conduct resulted in a loss of approximately eighteen million dollars. *See* U.S.S.G. § 2B1.1(b)(1)(1)(k) (providing that the Court should increase the Offense

---

**2.** A share certificate is a credit union term that describes a financial instrument similar to a certificate of deposit.

**3.** Pursuant to federal regulation, every federally insured credit union is required to submit quarterly reports, i.e. notice call reports, to the NCUA, which requires the disclosure of the credit union's financial condition—including the disclosure of the number and amount of outstanding share certificates.

Level by 20 levels "[i]f loss amount is more than $9,500,000").

After the sentencing hearing, the Court allowed Defendant Hernandez to remain on bond and ordered that she self-surrender to the Bureau of Prisons "on or before November 28, 2016, before 2:00 p.m." J. 2. Defendant Hernandez then filed her notice of appeal on October 4, 2016. Notice of Appeal, Oct. 4, 2016, ECF No. 117.

## II. LEGAL STANDARD

■ Congress intended the availability of bond pending appeal to be substantially limited. *United States v. Valera–Elizondo*, 761 F.2d 1020, 1024–25 (5th Cir. 1985). In order to secure bond pending appeal, a defendant must satisfy the requirements of the Bail Reform Act, 18 U.S.C. § 3143. That section states that a defendant must be detained unless the Court concludes:

 (A) by clear and convincing evidence that the person is not likely to flee or pose a danger to the safety of any other person or the community if released under section 3142(b) or (c) of this title; and

 (B) that the appeal is not for the purpose of delay and raises a substantial question of law or fact likely to result in—

 (i) reversal,

 (ii) an order for a new trial,

 (iii) a sentence that does not include a term of imprisonment, or

 (iv) a reduced sentence to a term of imprisonment less than the total of the time already served plus the expected duration of the appeal process.

18 U.S.C. § 3143(b)(1).

In *United States v. Valera–Elizondo*, 761 F.2d 1020 (5th Cir. 1985), the Fifth Circuit clarified the applicable standard. The Fifth Circuit first determined that the phrase "raises a substantial question of law or fact likely to result in reversal" did not "mean that a court may grant bail only if it finds that its own rulings are likely to be reversed on appeal." *Id.* at 1021. To adopt such a reading would "have conditioned bail on the willingness of the trial judge to certify his or her own error." *Id.* at 1023 (quoting *United States v. Miller*, 753 F.2d 19, 23 (3d Cir. 1985)).

■ ■Rather, a court must first "determine that the question raised on appeal is substantial, that is to say a question that is novel, which has not been decided by controlling precedent, or which is fairly doubtful." *Id.* However, "the absence of controlling precedent is only one factor to be considered." *Id.* at 1024. It may be that no precedent exists in this circuit, "but there may also be no real reason to believe that this circuit would depart from unanimous resolution of the issue by other circuits." *Id.* (quoting *United States v. Giancola*, 754 F.2d 898, 901 (11th Cir. 1985)). Moreover, "the issue presented must raise a substantial doubt (not merely a fair doubt) as to the outcome of its resolution." *Id.*

Additionally, § 3143(b) "establishes a presumption against" granting a defendant's request for bail pending appeal. *United States v. Williams*, 822 F.2d 512, 517 (5th Cir. 1987). Finally, the defendant has the burden to establish the requirements of § 3143(b). *United States v. Crabtree*, 754 F.2d 1200, 1201 (5th Cir. 1985).

## III. ANALYSIS

■ The Court concludes that Defendant Hernandez has not met the requirements of § 1343(b)(1)(B) and, thus, finds it unnecessary to address whether she meets of § 3143(b)(1)(A)'s criteria; Defendant Hernandez is required to prove both prongs to establish that she is entitled to bond pending appeal.

Here, Defendant Hernandez asserts that she "will primarily argue [on appeal] that the amount of loss was miscalculated." Mot. 6. Thus, she maintains that "it is likely that [her] appeal of the loss or restitution amount, which has direct bearing on the guidelines calculation, will result in reversal." *Id.*

Pursuant to the applicable sentencing guidelines, the general rule is that "loss is the greater of actual or intended loss." U.S. Sentencing Guidelines Manual § 2B1.1(b)(1) app. 3(A) (U.S. Sentencing Comm'n 2015). "Actual Loss" means "the reasonably foreseeable pecuniary harm that resulted from the offense." *Id.* at app. 3(A)(i). "The [C]ourt need only make a reasonable estimate of the loss. The sentencing judge is in a unique position to assess the evidence and estimate the loss based upon that evidence. For this reason, the [C]ourt's loss determination is entitled to appropriate deference." *Id.* at app. 3(C).

 "The amount of loss is a factual finding which ... is reviewed for clear error." *United States v. Kuhrt*, 788 F.3d 403, 423 (5th Cir. 2015). "Findings of fact for sentencing purposes need only be found by a preponderance of the evidence," and "the findings must be plausible in light of the record as a whole." *United States v. Simpson*, 741 F.3d 539, 556–57 (5th Cir. 2014).

## A. The Court's Findings

After conducting the evidentiary hearing, and reviewing the PSR and briefings, the Court concluded that Defendants' conduct caused a loss of approximately 18 million dollars; this was the "reasonably foreseeable pecuniary harm that resulted from the offense." *See* § 2B1.1(b)(1) app. 3(A)(i). First and foremost, the Court arrived at this conclusion because both Defendants *admitted that this was true* during their plea hearing.

The scheme to sell share certificates which were not recorded in the credit union's general ledger led to the insolvency of the credit union. As a result of the fraudulent scheme, the National Credit Union Administration paid out $18,376,542 in claims from the purchasers of the unrecorded share certificates that were sold by Hernandez and Mendoza between August 14th, 2007, and September 14th, 2012, because the credit union did not have the assets to pay for these share certificates.

THE COURT: All right. Ms. Stillinger, any corrections?

. . . .

MS. STILLINGER: Apart, Your Honor, from their statements of Ms. Mendoza, which we don't necessarily agree with, but as to the rest of it, we have no corrections.

THE COURT: All right. And, Ms. Hernandez, you've heard the facts that the prosecutor just read regarding your case, and with the clarification, I guess, made by your attorney, are those facts that the prosecutor just read regarding your case true?

DEFENDANT HERNANDEZ: Yes, Your Honor.

THE COURT: All right. And, Mr. Lopez, did you have any corrections as to that factual basis with regard to your—your client's—

MR. LOPEZ: No, Your Honor.

. . . .

And, Ms. Mendoza, you heard the facts that the prosecutor just read regarding your case. Are those facts true?

DEFENDANT SIMENTAL MENDOZA: Yes, Your Honor.

Plea Tr. 44–46, Sept. 9, 2016, ECF No. 97.

Second, the Court found that Defendants were responsible for the eighteen

million dollar loss because it was reasonably foreseeable that their actions would result in this pecuniary harm. Namely, the evidence demonstrated, and Defendants admitted, that (1) they sold at least 112 share certificates without recording them in the EPFCU's ledger; (2) the NCUA ultimately paid slightly more than eighteen million dollars to cover the costs of these unrecorded share certificates; and (3) Jennifer Murphy, the NCUA's Director of Liquidation Services, testified during the evidentiary hearing that the unrecorded share certificates were the reason for the EPFCU's insolvency.

Thus, the Court determined that it was reasonably foreseeable that failing to document significant amounts of EPFCU's debt in the form of unrecorded share certificates would result in the institution's eventual insolvency and, consequently, its inability to pay these share certificates. Furthermore, after reviewing the evidence—including the testimony of Stephen Lillie—the Court found that it was more likely than not that Defendants' failure to record the 112 share certificates was deliberate and not due to neglect or "poor management." Mr. Lillie testified that he did not believe the failure to record the share certificates was oversight or error—co–Defendant Simental Mendoza maintained a list of the unreported share certificates on her computer.

### B. Defendant Hernandez's Arguments

Defendant Hernandez primarily relies on one piece of evidence—the Lillie & Company Special Procedures Report ("Report")—to argue that only approximately three million of the eighteen million dollar loss was attributable to the Defendants' wrongful conduct: "the balance of the amount paid by NCUA to cover the shortfall of deposits of EPFCU could not be distinguished as attributable to incompetence, market conditions, or fraud." Mot. 6. Therefore, relying on *United States v. Olis*, 429 F.3d 540 (5th Cir. 2005), Defendant Hernandez further argues that she did not "cause" an eighteen million dollar loss as that term is used in § 2LB1.1. *See id.* at 6–7. Defendant Hernandez's reliance on the Report and *Olis* is misplaced.

#### 1. The Report

Defendant Hernandez's argument regarding the Report is unpersuasive for several reasons: (1) it was limited in scope; (2) it was only one piece of evidence, among others, that the Court considered in determining the loss amount; and (3) its conclusion supports the Court's finding that Defendant Hernandez conduct caused an eighteen million dollar loss—despite her assertion to the contrary.

The NCUA requested that Lillie & Company LLC, a credit union auditing, investigation, and consulting company, to conduct an independent investigation of the irregularities in EPFCU's financial condition and Defendants' improper actions. The Government asserts, and the Report acknowledges, that one of the purposes, if not the main purpose, of the audit that formed the basis of the Report was to supplement and support a bond claim that the liquidating agent for the EPFCU would submit to receive an available four million dollar bond. Evidentiary Hr'g Ex. A, at 1, Sept. 7, 2016, ECF No. 96 ["Report"]; *see also* Gov't's Resp. to Def.'s Sentencing Mem. 1. Thus, the audit's purpose was limited and was completed "once it was clear that that the auditors could show a loss sufficient for the [NCUA] to recover the $400,000 bond that was available in such circumstances." *Id.*

The Report conducted three separate analyses. Two of the analyses identified activity in the member accounts Defendant Hernandez used to access funds from non-

member share certificates and the third analysis included only the interest checks she used to pay interest on the nonmember certificates of deposit using funds in these member accounts. Report 2–3. All analyses only included deposit and withdraw transactions that exceeded one thousand dollars. *Id.* Additionally, the Report only included activity beginning in 2006 through 2012, even though Defendants began their fraudulent activities since 2000. *See id.* at 4. As a result, the Report was not only limited in purpose but also in scope.

Because of the Report's limited scope and purpose, the Court did not solely rely on the Report in determining the loss amount. The Court also relied on the findings in the PSR, the testimony introduced at the evidentiary hearing, and the factual basis recited during the Defendants' plea hearing. Consequently, the Report was a necessary, but not exclusive, piece of evidence in determining the loss amount.

Finally, contrary to Defendant Hernandez's assertions, the Report concluded that, based upon the "supporting documentation, it appears that [EPFCU] sustained a loss of at least $19 million *resulting from the actions of their former employee ... Hernandez.*" Report 4 (emphasis added). The Report also clarified that it only "identified activity from 2006 through 2012 resulting in losses totaling $3,687,042.28" and that "*[d]ue to a lack of documentations,* the remaining loss of $15.3 million is not included." *Id.* (emphasis added). Thus, the Report documented some of the illegal transactions and activity in which Defendants engaged and the manner in which a portion of the resultant funds were used— it did not purport to document the entire fraudulent scheme or consequential loss resulting from those activities and transactions.

In sum, the Report concluded that Defendant Hernandez's actions resulted in a loss of approximately nineteen million dollars despite the fact that it only documented three million dollars of that loss. Defendant Hernandez's arguments regarding the Report are inapposite.

### 2. *United States v. Olis*

Defendant Hernandez also relies on *United States v. Olis,* where the Fifth Circuit held that the district court erred in determining the applicable loss amount pursuant § 2B1.1 because it did not consider external market factors. 429 F.3d at 548–49. *Olis* is inapplicable here, however, because that case was a securities fraud case involving "stock market complexities" and this case does not. *See id.* at 546. The Fifth Circuit in *Olis* noted that its analysis dealt with security fraud cases involving fraudulent transactions that "cook the books" to "prop up a company's stock." *Id.* at 547. The *Olis* court elaborated that "[s]entencing decisions in these cases acknowledge that because a company's stock price is affected before and after the fraud, by numerous extrinsic market influences as well as the soundness of other business decisions by the company the calculation of loss attributable to securities fraud requires careful analysis." *Id.*

This analysis is not applicable to Defendants' case. "In the instant bank fraud action, '[t]he appropriate test is not whether market factors impacted the amount of loss, but whether the market factors and the resulting loss were reasonably foreseeable.'" *See United States v. Rubashkin,* 718 F.Supp.2d 953, 972 (N.D. Iowa 2010) (quoting *United States v. Parish,* 565 F.3d 528, 535 (8th Cir. 2009)) (alteration in original). Moreover, the victim is a Government agency that had to disburse funds owed on the unrecorded share certificates—not a shareholder. *See id.* The financial instruments at issue were share

certificates—not a security. *See id.* Therefore, the calculation of the amount the NCUA lost is based on the amount of money it paid to the purchasers of the unrecorded share certificates due to Defendants' fraud—"not on any fluctuating market factors that affect the value of a security." *See id.*

## IV. CONCLUSION

The Court finds that Defendant Hernandez has failed to show that there is a substantial doubt as to the resolution of this issue. Defendant Hernandez has also failed to show that it is more probable than not that her sentence will be reduced to a term of imprisonment shorter than the duration of the appeal. Accordingly, the Court finds that Defendant Hernandez has failed to raise a substantial question of law or fact that is likely to lead to reversal, an order of a new trial, or a sentence to a term of imprisonment shorter than the expected duration of the appeal.[4] The Court is of the opinion that Defendant Hernandez is not entitled to bond-pending appeal.

**IT IS THEREFORE ORDERED** that Defendant Maria Guadalupe Hernandez's "Opposed Motion to Continue on Bond Pending Appeal" (ECF No. 156) is **DENIED.**

---

4. Significantly, the Court notes that even a loss consistent with the Report (as Defendant Hernandez urges) would trigger a significant enhancement under the guidelines. *See* Report 4; *see also* § 2B1.1 (providing for an eighteen-level enhancement where the loss exceeds $3,500,000). Under any scenario, the guideline range of imprisonment would not be less than 121 months (i.e., even if the Court was incorrect in the loss calculation or in determining that the "authentication-feature" enhancement was applicable pursuant to § 2B1.1(b)(11)). *See* Sentencing Tr. 59–60, Nov. 28, 2016, ECF No. 158 ("[I]f I'm wrong on both the enhancements as to loss ... and the authentication feature, then ... the Court would impose a sentence at... 121 months ....").