UNITED STATES of America, Plaintiff,

v.

Morry WAKSBERG, M.D., et al., Defendants.

Civ. A. No. 91–1531 (JLG).

United States District Court, District of Columbia.

March 30, 1995.

William Mark Nebeker, Asst. U.S. Atty., Washington, DC, for plaintiff.

Robert N. Meals, pro hac vice Culp, Guterson & Grader, Seattle, WA, for defendants.

***OPINION***

JUNE L. GREEN, District Judge.

## I. Introduction

This matter is before the Court on the Government's Motion to Dismiss Defendants' ("Dr. Waksberg") Claims for Damages Based

Upon Contempt. In this Motion the Government argues that Dr. Waksberg's claim for damages based upon the Government's violation of the Court Order of September 24, 1991 is barred by the doctrine of sovereign immunity. The Court agrees with the Government and will, therefore, grant the Motion to Dismiss.

## II. Statement of Facts

This case began in 1987 with an investigation of Dr. Waksberg by the United States Department of Health and Human Services (HHS) and its Office of the Inspector General (OIG). On June 20, 1991, the Government filed a complaint against Dr. Waksberg in which it sought judicial enforcement of a settlement agreement between Dr. Waksberg and HHS. The Government argued that the settlement agreement resolved charges made by HHS that Dr. Waksberg submitted false claims to the federal Medicare program.

Dr. Waksberg filed a motion for a preliminary injunction pending resolution of the trial on the merits. On September 24, 1991, then presiding Judge Revercomb issued an order which stated in relevant part:

[The Government] is enjoined from disseminating or causing to be disseminated publicly any information that in any manner suggests that [Dr. Waksberg has] been excluded from participation in Medicare and Medicaid programs and [has] furnished services substantially in excess of the needs of individuals and of a quality not meeting professional standards.

Furthermore, [the Government] is enjoined from taking any steps to preclude [Dr. Waksberg] from participating in Medicare and Medicaid programs or in the reimbursement of Medicare [or] Medicaid claims in the absence of full compliance with all appropriate regulatory requirements.

*United States v. Waksberg*, C.A. No. 91–1531 (GHR), 1991 WL 641950, Order dated September 24, 1991, at 2. The injunction applied to OIG, as the office within HHS responsible for investigating Medicare fraud and for implementing, through its regional offices, physician exclusions and suspensions from Medi-

care and Medicaid programs. *United States v. Waksberg*, C.A. No. 91–1531 (GHR), 1992 WL 237367, Order dated July 28, 1992, at 3. The injunction was to remain in place until the Court ruled after hearing arguments on proposed findings of fact and conclusions of law on December 3, 1991. *Id.*

On October 23, 1991, Transamerica–Occidental Life Insurance Company ("Transamerica"), HHS's Medicare carrier in southern California, issued a newsletter to approximately 52,000 hospital administrators, physicians and other interested persons in that area publicizing Dr. Waksberg's name at the head of a list of health care providers who had been excluded from participating in the Medicare program. *Id.* at 3–4, 1992 WL 237367. The newsletter falsely stated that Dr. Waksberg had been excluded as of September 26, 1989. *Id.* at 4, 1992 WL 237367. At a hearing on October 29, 1991, the Court found that the publication of Dr. Waksberg's name in the newsletter violated the Order of September 24, 1991. *Id.* at 1 n. 1, 1992 WL 237367.

On July 18, 1992, the Court heard oral argument on Dr. Waksberg's Supplemental Motion for Order of Contempt and Sanctions. *Id.* The Court concluded that there was clear and convincing evidence that the Government failed to comply with the preliminary injunction order on September 24, 1991; the Court then cited the Government for civil contempt. *Id.* at 5, 7, 1992 WL 237367. Since the preliminary injunction bound Transamerica as the agent of HHS in Medicare administration matters, the Court held HHS responsible for Transamerica's violation of the injunction. *Id.* at 5, 1992 WL 237367.

The Court then sought a sanction that would coerce future compliance and remedy past non-compliance. *Id.* at 7, 1992 WL 237367. With the latter in mind the Court stated, "The Court believes that Dr. Waksberg is entitled to compensation to the extent he can prove damages caused by [the Government's] violation of the preliminary injunction ... Such a compensatory fine is analogous to a tort judgment for damages caused by wrongful conduct and where a complainant can demonstrate actual losses,

courts have held that compensatory damages must be awarded." *Id.* at 7–8, 1992 WL 237367 (citations omitted).

A hearing on compensatory damages was postponed until after the trial on the merits. After trial, the Court set a date for a hearing on damages and the Government filed its Motion to Dismiss [Dr. Waksberg's] Claims for Damages Based Upon Contempt.

## III. Discussion

### A. *Timeliness*

■ As a preliminary matter, Dr. Waksberg argues that the Government's Motion to Dismiss is untimely. (Defs. Mem. in Resp. to Pl.'s Mot. to Dismiss at 4–5.) The issue of sovereign immunity, however, is jurisdictional and may be raised at any time. Fed. R.Civ.P. 12(h)(3). Dr. Waksberg also claims that Judge Revercomb decided the "issue of monetary damages" in Dr. Waksberg's favor, and that his ruling is the "law of the case." (*Id.* at 4–5.) But Judge Revercomb's Order of July 28, 1992 does not directly address the issue of sovereign immunity and the Court, therefore, doubts whether it represents the "law of the case." *See Bouchet v. National Urban League*, 730 F.2d 799, 806 (D.C.Cir. 1984.) ("Questions that merely could have been decided do not become law of the case."). To the extent that the Order necessarily implies that sovereign immunity does not bar recovery of compensatory damages, this Court vacates that decision as clear error. *See Alliance for Cannabis Therapeutics v. DEA*, 15 F.3d 1131, 1134 (D.C.Cir.1994) (explaining that courts will reconsider rulings that result in clear error). In any event, the Court is free to rule on this issue since the doctrine of "law of the case" is a prudential rather than a jurisdictional restriction on a Court's authority to reconsider an issue once it has been decided. *Women's Equity Action League v. Cavazos*, 906 F.2d 742, 751–52 n. 14 (D.C.Cir.1990). The Court, therefore, holds that the Motion is not untimely and consideration of the Motion is not precluded by the "law of the case" doctrine.

### B. *Sovereign Immunity*

■ In the matter presently before the Court, Dr. Waksberg seeks money damages as compensation for all injuries he may have suffered as a result of the Government's violation of the preliminary injunction. In order to determine whether the doctrine of sovereign immunity applies to a case, a court must first decide whether the action is "against the sovereign." "The general rule is that a suit is against the sovereign if the judgment sought would expend itself on the public treasury or domain or interfere with the public administration ... or if the effect of the judgment would be to restrain the government from acting or compel it to act." *Dugan v. Rank*, 372 U.S. 609, 620, 83 S.Ct. 999, 1006, 10 L.Ed.2d 15 (1963) (citations omitted). In this case, the money damages which Dr. Waksberg seeks would plainly come from the public treasury. This action, therefore, is "against the sovereign."

■ The doctrine of sovereign immunity "stands as an obstacle to virtually all direct assaults against the public fisc, save only those incursions from time to time authorized by Congress." *United States v. Horn*, 29 F.3d 754, 761 (1st Cir.1994). The doctrine which has emerged from countless Supreme Court cases is that the United States government can only be sued when it has expressly given its consent to be sued, *United States v. Mitchell*, 463 U.S. 206, 212, 103 S.Ct. 2961, 2965, 77 L.Ed.2d 580 (1983) and the consent must be clear and unequivocal and it will not be implied. *United States v. King*, 395 U.S. 1, 4, 89 S.Ct. 1501, 1502, 23 L.Ed.2d 52 (1969). The government's consent to be sued "must be construed strictly in favor of the sovereign ... and not enlarged beyond what the language requires...." *United States v. Nordic Village Inc.*, 503 U.S. 30, 32–34, 112 S.Ct. 1011, 1014–15, 117 L.Ed.2d 181 (1992) (citation omitted). A Court will find a waiver only when a legislative intent is "so clear and explicit as to brook no reasonable doubt." *Hubbard v. Environmental Protection Agency*, 982 F.2d 531, 532–33 (D.C.Cir.1992). Consequently, the Government is immune from Dr. Waksberg's claim for compensatory damages in the absence of an explicit, unequivocal waiver of sovereign immunity.

■ The most appropriate starting point in the Court's search for a waiver is 18

U.S.C. § 401 which furnishes federal courts with contempt powers. The statute provides in pertinent part:

> A court of the United States shall have power to punish by fine or imprisonment, at its discretion, such contempt of its authority, and none other, as—
>
> (1). Misbehavior of any person in its presence or so near thereto as to obstruct the administration of justice;
>
> (2) Misbehavior of any of its officers in their official transactions;
>
> (3) Disobedience or resistance to its lawful writ, process, order, rule, decree, or command.

18 U.S.C. § 401 (1966). This statute does not qualify as a waiver of sovereign immunity since it contains no explicit, unequivocal language allowing the government to be sued. *Coleman v. Espy,* 986 F.2d 1184, 1191 (8th Cir.1993), *cert. denied,* —— U.S. ——, 114 S.Ct. 301, 126 L.Ed.2d 249 (1993). In *United States v. Horn,* 29 F.3d 754 (1st Cir.1994), the Court of Appeals of the First Circuit made the following observation: "Even though a federal statute, 18 U.S.C. § 401, confers broad powers upon federal district courts to punish contumacious conduct, most courts continue to hold that sovereign immunity bars court imposed fines for contempt against the government." *Id.* at 763. The Court also stated as *dicta* that 18 U.S.C. § 401 does not "offer a vehicle powerful enough to overrun sovereign immunity." *Id.* at 764 n. 11.

The statutes which do reveal an unequivocal waiver of sovereign immunity do not apply to this case. The Administrative Procedures Act ("APA") waives sovereign immunity but only for non-pecuniary claims.[1] The Equal Access to Justice Act, 28 U.S.C. § 2412 (1994), only provides a waiver for costs and fees.

■ One court has advanced the argument that the Rules Enabling Act, 28 U.S.C. §§ 2071–2077 (1994)[2], evinces a willingness on the part of Congress to waive sovereign immunity as to the Federal Rules of Civil Procedure ("FRCP"). *See Barry v. Bowen,* 884 F.2d 442, 444 (9th Cir.1989). This provides the argument that the government must answer for violations of the rules and since preliminary injunctions arise from FRCP 65 the government is liable for any violation of a preliminary injunction. This argument is problematic for several reasons. First, FRCP 65 does not mention anything about an award of damages to a party injured by a violation of the injunction, though other rules demonstrate explicit calls for sanctions, costs and fees.[3] Second, the REA does not offer any unequivocal expression of Congressional intent to waive sovereign immunity. *See United States v. Sherwood,* 312 U.S. 584, 589–90, 61 S.Ct. 767, 771, 85 L.Ed. 1058 (1941). Finally, 28 U.S.C. § 2072(b) states that the Federal Rules of Civil Procedure "shall not abridge, enlarge or modify any substantive right"; yet, sovereign immunity is a substantive right. *Elliott v. Perez,* 751 F.2d 1472, 1479 (5th Cir.1985); *See* Timothy J. Simeone, *Rule 11 and Federal Sovereign Immunity: Respecting the Explicit*

---

**1.** The APA states in relevant part:

> An action in a court of the United States seeking relief *other than money damages* and stating a claim that an agency or an officer or employee thereof acted or failed to act in an official capacity ... shall not be dismissed ... on the ground that it is against the United States.
>
> 5 U.S.C. § 702 (emphasis added).

**2.** The REA includes the following provision:

> The Supreme Court shall have the power to prescribe general rules of practice and procedure ... for cases in the United States district courts (including proceedings before magistrates thereof) and courts of appeals.
>
> 28 U.S.C. § 2072(a).

**3.** *See* FRCP 4(d)(2), (5) (costs for failure to comply with request for waiver of service of summons); FRCP 11 (sanctions for filing improper motion, etc.); FRCP 16(f) (sanctions for violation of pretrial and scheduling orders); FRCP 26(g)(3) (sanction for unjustified certification); FRCP 30(g) (sanctions for failure to attend deposition or serve subpoena); FRCP 37 (sanctions for failure to cooperate in discovery); FRCP 41(d) (costs for previously-dismissed action); FRCP 45(c)(1) (sanction for unduly burdensome subpoena); FRCP 54(d)(1) (costs for prevailing party); FRCP 56(g) (contempt judgment and expenses for bad faith affidavits); FRCP 68 (costs for not accepting more favorable offer); FRCP 70 (costs and contempt judgment for failure to perform specific acts) and FRCP 76(c) (costs against party that loses before magistrate).

*Waiver Requirement,* 60 U.Chi.L.Rev. 1043, 1053–54 (1993).

 The final possible ground upon which to support an award of compensatory damages based on contempt is the Court's inherent authority to protect "the due and orderly administration of justice and ... maintain[ ] the authority and dignity of the court." *See Roadway Express, Inc. v. Piper,* 447 U.S. 752, 764, 100 S.Ct. 2455, 2463, 65 L.Ed.2d 488 (1980). It is elementary that courts have inherent power to enforce compliance with their lawful orders through civil contempt. *Shillitani v. United States,* 384 U.S. 364, 370, 86 S.Ct. 1531, 1535, 16 L.Ed.2d 622 (1966).

 This case represents a direct conflict between the inherent power of the Court and the doctrine of sovereign immunity. When this clash occurs, the doctrine of sovereign immunity prevails over inherent judicial power. *United States v. Horn,* 29 F.3d 754, 764 (1st Cir.1994). This is so because the doctrine of sovereign immunity is designed, among other things, to prevent judicial encroachment on executive functions. *Id.* (citing *Larson v. Domestic & Foreign Corporation,* 337 U.S. 682, 704, 69 S.Ct. 1457, 1468, 93 L.Ed. 1628 (1949)). Sovereign immunity can only be curtailed pursuant to the exercise of legislative not judicial power.

 Though the Court holds that sovereign immunity bars recovery of compensatory damages based on contempt it does not reach this conclusion unaware that a common result of sovereign immunity is that injured parties are not compensated. In light of the rather heavy burden suffered by some victims of governmental abuse, there are many arguments in the legal community for the abolition of the doctrine of sovereign immunity.[4] Justice Stevens, writing for the minority in *United States v. Nordic Village Inc.,* 503 U.S. 30, 38–45, 112 S.Ct. 1011, 1017–1021, 117 L.Ed.2d 181 (1992), offered the following opinion:

Despite its ancient lineage, the doctrine of sovereign immunity is nothing but a judge-made rule that is sometimes favored and sometimes disfavored. Its original reliance on the notion that a divinely-ordained monarch "can do no wrong" is, of course, thoroughly discredited.

*Id.* at 42, 112 S.Ct. at 1019. The Court, however, is not free to arrive at a conclusion which is plainly at odds with the law handed down to it from the Supreme Court and so it is compelled in this matter to reach a thoroughly distasteful result.

The Court, however, would like to make clear that its ruling is limited to Dr. Waksberg's recovery of damages based on a finding of contempt. It expresses no opinion regarding any other claims which Dr. Waksberg may have under state or federal law.

## IV. Conclusion

Based on the foregoing analysis, the Court holds that the doctrine of sovereign immunity bars Dr. Waksberg's recovery of damages as compensation for any injuries which may have resulted from the Government's violation of the Court Order of September 24, 1991. The Court, therefore, grants the Government's Motion to Dismiss Defendants' Claims for Damages Based Upon Contempt.

### ORDER

Upon consideration of the Government's Motion to Dismiss Defendants' Claims for Damages Based Upon Contempt, it is by the Court this 30th day of March, 1995,

ORDERED that the Government's Motion to Dismiss is GRANTED; it is further

ORDERED that the Government's Motion for Sanctions, dated May 5, 1993, the Government's Supplemental Memorandum in Support of its Motion for Sanctions, dated May 17, 1993 and the Second Supplemental Memorandum in Support of the Government's Motion for Sanctions, dated May 21, 1993 are MOOT as to the requests to preclude Dr. Waksberg from introducing evi-

---

4. Timothy J. Simeone, *Rule 11 and Federal Sovereign Immunity: Respecting the Explicit Waiver Requirement,* 60 U.Chi.L.Rev. 1043, 1058 n. 95 (1993); *United States v. Horn,* 29 F.3d 754, 762 n. 7 (1st Cir.1994); *United States v. Nordic Village Inc.,* 503 U.S. 30, 42 n. 11, 12, 112 S.Ct. 1011, 1019 n. 11, 12, 117 L.Ed.2d 181 (1992) (Stevens, J., dissenting).

dence regarding any claim of damages resulting from publication of the newsletter and DENIED as to the request for attorney's fees and costs; it is further

ORDERED that the hearing on damages scheduled for April 19, 1995 is CANCELLED.