UNITED STATES of America, Appellee

v.

Morry WAKSBERG, M.D., and Morry Waksberg, M.D., Inc., Appellants.

No. 95–5165.

United States Court of Appeals, District of Columbia Circuit.

Argued March 17, 1997.

Decided May 16, 1997.

Erwin Chemerinsky, Los Angeles, CA, argued the cause for appellants. With him on the briefs was Paul J. Weiner, Los Angeles, CA.

W. Mark Nebeker, Assistant U.S. Attorney, Washington, DC argued the cause for appellee. With him on the brief were Eric H. Holder, Jr., U.S. Attorney, and R. Craig Lawrence, Assistant U.S. Attorney, Washington, DC.

Daniel J. Popeo, Utica, NY, Richard A. Samp, Arlington, VA, Arthur B. Spitzer, and Daniel I. Prywes, Washington, DC, were on the brief for amici curiae the Washington Legal Foundation and the American Civil Liberties Union of the National Capital Area in support of appellants.

Before RANDOLPH, ROGERS, and TATEL, Circuit Judges.

Opinion of the Court filed by Circuit Judge RANDOLPH.

RANDOLPH, Circuit Judge:

This appeal raises a question which, for prudential reasons, we will not decide at this time—whether, upon finding the United States in contempt for violating an injunction, a federal court may order the government to pay a compensatory fine despite its claim of sovereign immunity. The question is new to this court and to decide it we would have to resolve a dispute about the meaning of the Constitution. But there has not yet been a finding that the government's violation of the decree caused any monetary losses. Only if that is established on remand will it be necessary to resolve this dispute about the extent of the judiciary's power.

I

The Department of Health and Human Services investigated Morry Waksberg,

M.D., and Morry Waksberg, M.D., Inc., for submitting false or fraudulent claims for reimbursement under the Medicare program between 1984 and 1986. Waksberg and a Department representative signed a "Settlement Agreement" in September 1989 to resolve the government's civil claims against Waksberg. The Settlement Agreement provided, among other things, that Waksberg was to be excluded from the Medicare program for two years.

In June 1991, the United States brought an action against Waksberg to enforce the agreement. Shortly thereafter, Transamerica Occidental Life Insurance Co., the government's Medicare carrier in southern California, where Waksberg practiced, began sending letters to Waksberg's patients. The letters announced that Transamerica would not pay for services rendered by Waksberg because he had been excluded from the Medicare program. His exclusion, the letters stated, resulted from a determination that he had "furnished services substantially in excess of the needs of individuals and [of a] quality not meeting professional standards."

With the government's case pending in the district court, Waksberg reacted to Transamerica's letters by moving for a temporary restraining order against the United States. The district court (Revercomb, J.) issued a TRO in July 1991, ordering the United States to have Transamerica send letters to Waksberg's patients retracting the statements made in the earlier letters. The TRO, and a preliminary injunction issued in September 1991, further enjoined the United States "from disseminating or causing to be disseminated publicly any information that in any manner suggests that defendants have been excluded from participation in Medicare and Medicaid programs and have furnished services substantially in excess of the needs of individuals and of a quality not meeting professional standards." Despite 5 U.S.C. § 702, neither the TRO nor the preliminary injunction designated the government officers "personally responsible for compliance."

In October 1991, Transamerica distributed a newsletter to approximately 50,000 hospital administrators, physicians, and other interested persons. The newsletter listed Waksberg among a group of health care providers who had been excluded from the Medicare program. In an order dated July 28, 1992, the court held the United States in civil contempt for violating the preliminary injunction, finding that Transamerica was an agent of the government, that "there was little if any formal procedure by which [the government] communicated court orders to its regional offices and carriers, and ensured that these orders were complied with," and that, while the government had notified Transamerica of the TRO, it had not informed the company of the preliminary injunction. Hence the government "is held to account for Transamerica's publication of Dr Waksberg's name in violation of the injunction."

As to the question of sanctions, the court thought the newsletter might have affected Waksberg's reputation and thus "his ability to attract and maintain patients." One of the permissible purposes of civil contempt sanctions is "to compensate the complainant for losses sustained," through a fine payable to the complainant. *United States v. United Mine Workers of Am.,* 330 U.S. 258, 303–04, 67 S.Ct. 677, 701, 91 L.Ed. 884 (1947). Therefore, "Dr Waksberg is entitled to compensation to the extent he can prove damages caused by plaintiff's violation of the preliminary injunction." The court, in referring the case to a magistrate judge for the taking of evidence on the extent, if any, of Waksberg's "damages or loss" caused by the United States, emphasized that Waksberg would "be permitted to prove *only* those damages caused by *plaintiff's failure to comply with the preliminary injunction*" (emphasis in original).

A hearing on the compensatory fine was postponed until after the conclusion of the trial on the merits of the government's claims. After the trial, in which Waksberg prevailed, but before the hearing on the fine, the government filed a motion styled "Plaintiff's Motion to Dismiss Defendants' Claims for Damages Based Upon Contempt." Without attacking the underlying contempt citation, the government argued that sovereign

immunity "bars the award of ... damages against the government" in this case.

In an opinion and order dated March 30, 1995, the district court (June L. Green, J.) granted the government's motion, finding no waiver of sovereign immunity that would render the United States liable to pay a compensatory fine to Waksberg for its violation of the injunction. *United States v. Waksberg,* 881 F.Supp. 36, 39–41 (D.D.C.1995).

## II

Federal courts have the power to punish those who disobey their orders. *See* 18 U.S.C. § 401; *Shillitani v. United States,* 384 U.S. 364, 370, 86 S.Ct. 1531, 1535, 16 L.Ed.2d 622 (1966). The power is inherent, "shielded from direct democratic controls," and necessary to maintain the authority of the Judicial Branch. *Roadway Express, Inc. v. Piper,* 447 U.S. 752, 764, 100 S.Ct. 2455, 2463, 65 L.Ed.2d 488 (1980).

The judiciary may not impose monetary relief against the United States without its consent. The government's consent, its waiver of sovereign immunity, must appear as an "unequivocal expression" in "statutory text," at least when the cause of action arises under a federal statute. *United States v. Nordic Village, Inc.,* 503 U.S. 30, 37, 112 S.Ct. 1011, 1016, 117 L.Ed.2d 181 (1992).

Whether sovereign immunity stands in the way of a federal court ordering the United States to compensate a party for losses caused by the government's violation of an injunction is a question of first impression in this court, and in all but one other court of appeals. The Eighth Circuit is the exception. *See Coleman v. Espy,* 986 F.2d 1184, 1190–92 (8th Cir.1993). Waksberg makes a constitutional argument not discussed in *Coleman.* Basically it is this: separation of powers principles require the government's immunity to give way because judicial power to enforce court orders against the United States through contempt is an essential feature of the judicial function under Article III of the Constitution.

Waksberg raises other points, but we will not recite them or the government's rejoinders. The constitutional question he poses colors his non-constitutional arguments and is itself serious enough to invoke the principle Justice Brandeis described in his concurring opinion in *Ashwander v. Tennessee Valley Auth.,* 297 U.S. 288, 346–47, 56 S.Ct. 466, 482–83, 80 L.Ed. 688 (1936). The principle is that a federal court should not decide a constitutional issue unless it is necessary to do so. The Supreme Court has called this "a fundamental rule of judicial restraint." *Three Affiliated Tribes of the Fort Berthold Reservation v. Wold Engineering, P.C.,* 467 U.S. 138, 157, 104 S.Ct. 2267, 2278–79, 81 L.Ed.2d 113 (1984). *See also, e.g., Lyng v. Northwest Indian Cemetery Protective Ass'n,* 485 U.S. 439, 445, 108 S.Ct. 1319, 1323, 99 L.Ed.2d 534 (1988); *Bush v. Texas,* 372 U.S. 586, 590, 83 S.Ct. 922, 925, 9 L.Ed.2d 958 (1963) (per curiam); *Parker v. Los Angeles County,* 338 U.S. 327, 333, 70 S.Ct. 161, 163–64, 94 L.Ed. 144 (1949); *Rescue Army v. Municipal Court,* 331 U.S. 549, 568–70, 67 S.Ct. 1409, 1419–21, 91 L.Ed. 1666 (1947); *Spector Motor Serv., Inc. v. McLaughlin,* 323 U.S. 101, 105, 65 S.Ct. 152, 154, 89 L.Ed. 101 (1944). Just as the Supreme Court has a "policy of strict necessity in disposing of constitutional issues," *Rescue Army,* 331 U.S. at 568, 67 S.Ct. at 1419, we have "an obligation to avoid constitutional questions if at all possible," *Deaver v. Seymour,* 822 F.2d 66, 71 (D.C.Cir.1987). *See also, e.g., Harmon v. Thornburgh,* 878 F.2d 484, 494 (D.C.Cir. 1989); *Meredith Corp. v. FCC,* 809 F.2d 863, 870 (D.C.Cir.1987); *American Postal Workers Union v. U.S. Postal Service,* 764 F.2d 858, 861–62 (D.C.Cir.1985).

At this point, we do not know whether a ruling in Waksberg's favor would result in an order requiring the United States to compensate him. The district court's contempt order made the government's liability contingent. To recover anything, Waksberg had to establish that he sustained monetary losses from the government's violation of the preliminary injunction. Under the terms of the order, he must prove, first, that he suffered losses due to the publication of his name in the newsletter, and, second, that the United States caused those losses. Whether Waksberg can establish either proposition remains to be seen.

As to the extent of Waksberg's losses, the Transamerica newsletter did not say anything about why Waksberg had supposedly been excluded from the Medicare program. And it did not represent that Waksberg was currently excluded from the Medicare program. It said that he had been subject to a two year exclusion that had already ended by the time of publication. So it is conceivable that Waksberg's practice did not actually suffer due to the publication of his name in the newsletter. As to causation, the order specified that Waksberg was only to receive compensation to the extent that the "plaintiff"—the United States, not Transamerica—caused him harm. The government has an argument that its misconduct was not causally connected to the publication of Waksberg's name in the Transamerica newsletter: while no government officer notified Transamerica of the preliminary injunction, the HHS Office of Inspector General had notified Transamerica of the temporary restraining order and directed the responsible Transamerica officials not to implement "exclusions" of Waksberg until further notice.

We note these points not to express any view about whether Waksberg will succeed in proving monetary losses caused by the government's violation of the decree, but simply to show that his recovery is not a foregone conclusion. If Waksberg cannot prove his case, he will not be entitled to compensation from the government and the issue of sovereign immunity will drop out of the case.

In the past, this court and others have declined to decide cases or aspects of cases that raised constitutional issues when other proceedings or further evidentiary findings might have made the resolution of those issues unnecessary. *See, e.g., Deaver,* 822 F.2d at 71; *Vincent v. Brown,* 590 F.2d 1137, 1138–39 (D.C.Cir.1978); *United States v. Diamond,* 820 F.2d 10, 12–13 (1st Cir.1987) (en banc); *Dhangu v. INS,* 812 F.2d 455, 460–61 (9th Cir.1987); *Wagman v. Arnold,* 257 F.2d 272, 277 (2d Cir.1958). *Cf. Three Affiliated Tribes,* 467 U.S. at 157–58, 104 S.Ct. at 2278–79; *Rescue Army,* 331 U.S. at 584–85, 67 S.Ct. at 1427–28. We follow the same course here.

Accordingly, we vacate the district court's March 30, 1995, order granting the government's motion to dismiss, and remand the case with instructions that the district court withhold a ruling on the motion pending a determination of the extent of the government's liability to Waksberg under the terms of the district court's July 28, 1992, order. If the district court finds that Waksberg sustained monetary losses caused by the government's violation of the preliminary injunction, the court may on motion of the government reissue its decision barring relief on the ground of sovereign immunity.

*So ordered.*