NOT FOR PUBLICATION

**UNITED STATES BANKRUPTCY APPELLATE PANEL**

**OF THE NINTH CIRCUIT**

| | |
|---|---|
| In re: | BAP Nos. CC-14-1102-DTaSp |
| | CC-14-1103-DTaSp |
| MORRY WAKSBERG, M.D., | (Related Appeals) |
| MORRY WAKSBERG, M.D., INC., | |
| Debtors. | Bk. Nos. 06-16096-BB |
| | 06-16101-BB |

THE BANKRUPTCY LAW FIRM, PC,

　　　　　Appellant,

v.　　　　　　　　　　　　　　**M E M O R A N D U M**[1]

ALFRED H. SIEGEL, Chapter 7
Trustee; MORRY WAKSBERG, MD;
IDA WAKSBERG,

　　　　　Appellees.

Argued and Submitted on September 18, 2014
at Pasadena, California

Filed - October 15, 2014

Appeals from the United States Bankruptcy Court
for the Central District of California

Honorable Sheri Bluebond, Bankruptcy Judge, Presiding

Appearances:　　Kathleen P. March of The Bankruptcy Law Firm,
　　　　　　　　P.C., argued for Appellant The Bankruptcy Law
　　　　　　　　Firm, P.C.; Byron Moldo of Ervin, Cohen & Jessup
　　　　　　　　LLP and Daniel A. Lev of SulmeyerKupetz, APC
　　　　　　　　argued for Appellee Alfred H. Siegel, Chapter 7
　　　　　　　　Trustee.

---

　　[1]　　This disposition is not appropriate for publication. Although it may be cited for whatever persuasive value it may have (see Fed. R. App. P. 32.1), it has no precedential value. See 9th Cir. BAP Rule 8013-1.

Before:  DUNN, TAYLOR, and SPRAKER,[2] Bankruptcy Judges.

Years after the related chapter 11[3] cases of an ophthalmologist, Morry Waksberg, M.D., and his corporation, Morry Waksberg, M.D., Inc. ("Corporation"), were converted to chapter 7, the bankruptcy court approved the chapter 7 trustee's motion to consolidate the cases for distribution purposes.  The bankruptcy court also approved a settlement which allowed, inter alia, substantial personal exemptions to Dr. Waksberg that he first claimed more than two years after filing his personal bankruptcy case.  But for the consolidation, Dr. Waksberg's personal case apparently would not have sufficient funds to implement the settlement and pay his allowed personal exemptions. The approval of consolidation and the settlement together would deplete the funds of the Corporation's case, such that Appellant, the holder of an unpaid chapter 11 administrative claim in the Corporation's case, no longer would be paid its approved fees in full.[4]  Hence, these appeals.  We AFFIRM the bankruptcy court's order ("Compromise Order") approving the settlement, as amply supported by the record before us.  However, we VACATE the order

[2]     The Honorable Gary A. Spraker, Chief Bankruptcy Judge for the District of Alaska, sitting by designation.

[3]     Unless otherwise indicated, all chapter and section references are to the federal Bankruptcy Code, 11 U.S.C. §§ 101-1532, and all "Rule" references are to the Federal Rules of Bankruptcy Procedure, Rules 1001-9037.

[4]     We granted a stay to preserve the status quo pending disposition of the related appeals.

granting substantive consolidation, as inconsistent with the standard adopted by the Ninth Circuit in <u>Alexander v. Compton (In re Bonham)</u>, 229 F.3d 750 (9th Cir. 2000), in the face of substantial opposition from an interested party, and REMAND to the bankruptcy court for further proceedings.

## I. FACTUAL BACKGROUND

The appeals pending before the Panel have their genesis in disputes that arose more than 20 years ago.[5] In 2005, Dr. Waksberg and the Corporation entered into a settlement agreement ("Transamerica Settlement Agreement") with Transamerica Insurance Company ("Transamerica"). The Transamerica Settlement Agreement resolved litigation which Dr. Waksberg and the Corporation had filed in 1992 against Transamerica, alleging claims for defamation. The settlement with Transamerica was in the amount of $11 million. Dr. Waksberg and the Corporation also settled litigation pending against the law firm of Skadden, Arps, Slate, Meagher & Flom, LLP ("Skadden Arps Settlement") for the amount of $2.6 million.[6]

---

[5] One piece of the litigation is the subject of a DC Circuit Court of Appeals decision in 1997; this decision contains background facts relating to the underlying dispute only tangentially relevant to this disposition. <u>See</u> <u>United States v. Waksberg</u>, 112 F.3d 1225 (D.C. Cir. 1997). In essence, it appears that Dr. Waksberg's patients were improperly informed in the mid- to late 1980s that he no longer could participate in the Medicare reimbursement program. Transamerica was the federal government's agent at the time.

[6] Dr. Waksberg and the Corporation filed a state court action against Skadden Arps, previously their counsel in the Transamerica litigation, seeking damages for legal malpractice, <span style="float:right">continue...</span>

-3-

On November 21, 2006, Dr. Waksberg and the Corporation each filed voluntary petitions for relief under Chapter 11 of the Bankruptcy Code. The cases were converted from chapter 11 to chapter 7 on May 24, 2007. Alfred H. Siegel ("Trustee") was appointed trustee in both chapter 7 cases. Funds from the Transamerica Settlement[7] and the Skadden Arps Settlement[8] constitute essentially all of the assets of the bankruptcy estates.

1.   Allocation of the Settlement Proceeds Pursuant to the Settlement Agreements

Paragraph 6.a. of the Transamerica Settlement Agreement provides:

> In full settlement of all claims covered herein, and subject to all other terms of this Agreement, Transamerica agrees to pay plaintiffs the amount of Eleven Million Dollars and No Cents ($11,000,000.00). The total consideration of eleven million dollars ($11,000,000.00) shall be promptly paid and disbursed by Transamerica, in the form of seven separate checks (or six separate checks and one wire transfer) as

---

[6]...continue breach of fiduciary duty, fraud and deceit, nondisclosure, breach of contract, conversion, replevin, injunction, invasion of privacy, constructive trust, equitable accounting, and unjust enrichment.

[7]   On November 1, 2006, the remaining proceeds of the Transamerica Settlement Agreement (then in the amount of $9,450,000 plus accrued interest) were interpleaded by Transamerica into the California state court ("Interpleader Action") in light of the numerous lien claims being asserted by professionals in the litigation. Dr. Waksberg appears to have had a volatile relationship with a series of attorneys.

[8]   In 2006, approximately $1 million was turned over to the law firm of Hoge, Fenton, Jones & Appel, Inc., and thereafter turned over to the Trustee in June of 2007.

provided herein.

Paragraph 7 of the Transamerica Settlement Agreement sets forth the specifics of how the six checks were to be issued:

- $600,000 payable to the Corporation as compensation for lost earnings (corporate earnings for medical fees not earned)

- $2,280,000 payable to the Corporation as compensation for lost earnings (corporate earnings for medical fees not earned)

- $2,750,000 payable to the Corporation as compensation for loss of corporate medical practice and related corporate Goodwill

- $1 million payable to Dr. Waksberg as compensation for personal injuries which had a physical manifestation

- $3 million payable to Dr. Waksberg as compensation for loss of personal name and reputation (Goodwill) in medical and related fields of business

- $420,000 payable to the Corporation as compensation for lost earnings (corporate earnings for medical fees not earned)

Finally, paragraph 6.c. of the Transamerica Settlement Agreement provides for the payment of $950,000 to the Corporation, either by check or by wire transfer, as compensation for lost earnings (corporate earnings for medical fees not earned).

It appears that similar allocations between Dr. Waksberg and the Corporation were made in the Skadden Arps Settlement Agreement. "The amount of $472,727.28 shall be allocated to settlement of claims seeking compensation for personal injuries to [Dr. Waksberg] which had a physical manifestation."[9]

_____

[9] This quotation was taken from the proposed settlement of the Exemption Objection. No copy of the Skadden Arps

continue...

-5-

## 2. The Law Firm's Claim for Unpaid Fees

An Official Committee of Unsecured Creditors ("Committee") was appointed in the Corporation's chapter 11 case. An order authorizing the employment of the Bankruptcy Law Firm, PC ("Law Firm"), was entered on May 1, 2007.

On September 27, 2007, the bankruptcy court entered an order granting compensation ("Fee Award"), on an interim basis, to the Law Firm in the amount of $69,350.17 in fees and $3,606.40 in expenses for services provided in the Corporation's chapter 11 case. The Fee Award thereafter was approved on a final basis by the court's order entered September 23, 2008. The bankruptcy court authorized the payment of 50% of the Fee Award on March 30, 2009, from funds being held in the Interpleader Action. It is undisputed that the Law Firm received the 50% payment and that the remaining amount owed is $36,478.

## 3. Dr. Waksberg's Exemption Claims

In his personal case, Dr. Waksberg filed his original Schedule B (personal property schedule) on December 21, 2006. He included therein a contingent claim on account of litigation, also identified in Item 4 of his Statement of Financial Affairs. Schedule B stated that the current value of Dr. Waksberg's interest in the litigation was $0.00. As other personal property in which he claimed an interest, Dr. Waksberg included the Transamerica Settlement funds held in the Interpleader Action. Dr. Waksberg asserted the value of his interest in the

[9]...continue
Settlement Agreement is in the record.

Transamerica Settlement proceeds was $3,538,245.60. He also scheduled settlement funds held in a Wells Fargo trust account and asserted the value of his interest in those funds was $437,250.07.[10] However, Dr. Waksberg did not claim an exemption in any of the foregoing personal property assets in his Schedule C (property claimed as exempt), also filed on December 21, 2006. Neither did Dr. Waksberg assert an exemption claim in these assets when he amended his Schedules B and C on two occasions: on March 26, 2007 and on May 14, 2007.

On November 24, 2008, Dr. Waksberg filed an amended Schedule C in which, for the first time, he claimed an exemption in (a) a personal injury claim, asserting $20,725 as exempt, and (b) loss of future income, asserting $3,600,000 as exempt. Another amended Schedule C was filed on December 3, 2008. It is unclear why this December 3 amendment was made, as it appears to

---

[10] The Law Firm did not include in the record a copy of the Corporation's original or amended Schedule B. We have retrieved these documents from the bankruptcy court's electronic docket and take judicial notice of them. See O'Rourke v. Seaboard Sur. Co. (In re E.R. Fegert, Inc.), 887 F.2d 955, 957-58 (9th Cir. 1988); Atwood v. Chase Manhattan Mortg. Co. (In re Atwood), 293 B.R. 227, 233 n.9 (9th Cir. BAP 2003).
    The Corporation filed its original Schedule B on December 21, 2006 (docket no. 18). It then filed an amended Schedule B on March 26, 2007 (docket no. 109) and then another amended Schedule B on May 14, 2007 (docket no. 167). The original and amended B schedules appear to contain the same information.
    The Corporation listed the proceeds from two cash settlements. One was in the amount of $6,290,214.39, located in the registry of the Los Angeles Superior Court. These settlement proceeds were designated "interplead funds." The other was in the amount of $765,187.62, located in a Wells Fargo account.

contain identical claims of exemption as the November 28 amendment.

On December 29, 2008, the Trustee objected to the new claims of exemption ("Exemption Objection"). In the Exemption Objection, the Trustee pointed out that the averments of Dr. Waksberg's complaint against Transamerica alleged conduct by Transamerica which directly interfered with, and damaged, his professional reputation and interfered with prospective business opportunities. The Trustee asserted that such allegations are pecuniary in nature and do not give rise to a personal injury claim. The Trustee further asserted that the late claims of exemption were prejudicial to the creditors of Dr. Waksberg's estate. Although Dr. Waksberg appears to have made a verbal claim to the exemptions beginning from the time when the case converted to chapter 7, he failed to assert the exemption claims formally, notwithstanding the Trustee's ongoing position, communicated to Dr. Waksberg, that no exemption claim was appropriate. In the interim, the Trustee settled virtually all secured claims against the Transamerica funds before Dr. Waksberg claimed exemptions in those funds in his amended schedules. Finally, the Trustee suggested that Dr. Waksberg already had received $1.55 million from the Transamerica settlement funds before the bankruptcy cases were filed.

In his opposition filed on February 9, 2009, Dr. Waksberg asserted that the Transamerica Settlement Agreement allocated $1 million for his personal injuries for which there was a physical manifestation, and $3 million for his future earnings. Dr. Waksberg further asserted that the $1.55 million prepetition

-8-

distributions were paid to the Corporation, not to him. Finally, he asserted that the Trustee was on notice from the beginning of the chapter 7 case of his claim of exemptions, and that the Trustee failed to articulate how paying the exemptions now rather than at the beginning of the case would cause prejudice to the unsecured creditors, where there was not enough money to pay general unsecured claims in the first instance, citing <u>Arnold v. Gil (In re Arnold)</u>, 252 B.R. 778, 787 (9th Cir. BAP 2000).

In his reply, the Trustee reiterated that the settlement agreements and underlying complaints show no funds were allocated to Dr. Waksberg for "loss of future earnings"; rather, the allocations were for "loss of personal name and reputation," which did not entitle Dr. Waksberg to claim an exemption based on CCP § 703.140(b)(11)(E), as asserted in the most recent iterations of Dr. Waksberg's Schedule C.

4. <u>Ida Waksberg's Claims</u>

On March 16, 2007, Ida Waksberg, Dr. Waksberg's mother, filed proof of claim number 33-1 in the Corporation's bankruptcy case and claim number 49-1 in Dr. Waksberg's case (hereinafter jointly the "Ida Claim"). The Ida Claim was filed in the amount of $587,000 plus interest. The Ida Claim represented the amount Ida allegedly loaned to both Dr. Waksberg and the Corporation between 1987 and 2006. The Ida Claim expressly reserved the right to file an amendment, after an accounting had been completed, to allocate the Ida Claim between the two cases.

The Ida Claim was filed as secured, and it stated that Ida believed the claim was secured by "certain collateral" to be identified in the amended claim to be filed.

On December 23, 2011, the Trustee filed a motion ("Ida Claim Objection") to disallow Ida's claim in the Corporation's case. In the Ida Claim Objection, the Trustee alleged that Ida's claim constituted a false claim against the Corporation's bankruptcy estate. In the four-and-one-half years since she filed her claim, Ida never amended the claim, nor provided any supporting evidence to substantiate the Corporation's liability, attachment or perfection of her security interest, or the specific amount of her claim.

### 5. The Trustee's Compromise of Dr. Waksberg's Exemption Claims and Ida Waksberg's Claims

Following numerous continuances, the Exemption Objection finally was scheduled to be heard on March 27, 2014. A settlement was negotiated and documented by an agreement ("Compromise Agreement"). On February 7, 2014, the Trustee filed the motion to approve the Compromise Agreement ("Compromise Motion") to resolve the Exemption Objection. Although the caption of the Compromise Motion specifically identified only the November 24, 2008 amended Schedule C and the December 3, 2008 amended Schedule C as the matters that were being compromised, the body of the Compromise Motion contained the following catch-all: "and all of the claims of [Dr. Waksberg] and Ida Waksberg against the estate, including, but not limited to, the two secured claims filed by Ida Waksberg on March 16, 2007 against [Dr. Waksberg and the Corporation's] Estates, each in the amount of $587,000." Through the Compromise Motion, the Trustee proposed to pay Dr. Waksberg and Ida Waksberg, jointly, the total

-10-

sum of $1.6 million.[11]

Dr. Waksberg contested nearly every action of the Trustee throughout the pendency of the chapter 7 cases. Prior to entering into the Transamerica Settlement Agreement and the Skadden Arps Settlement Agreement, Dr. Waksberg and the Corporation filed malpractice actions against no fewer than three of the law firms that had represented them in the ongoing litigation. After the Trustee was appointed, he negotiated resolutions of these law firms' competing claims to the settlement proceeds. Dr. Waksberg and the Corporation not only opposed the settlements, but also appealed the orders that approved them.

Additionally, many professional applications for compensation were filed and approved in the bankruptcy cases. Again, Dr. Waksberg and the Corporation not only opposed approval of the compensation to these professionals, but also appealed the orders that approved their compensation.

In total, Dr. Waksberg filed 13 appeals from bankruptcy court orders to the United States District Court for the Central District of California. Each of those appeals ultimately was dismissed either by the District Court or at Dr. Waksberg's request.

After the bankruptcy cases were converted to chapter 7,

---

[11] Attached as Exhibit A to the Compromise Motion is the Compromise Agreement between Dr. Waksberg and Ida Waksberg on the one hand, and the Trustee (on behalf of both estates) on the other. The Compromise Agreement sets out in detail the significant litigation that had taken place to date in the bankruptcy cases, a brief summary of which we include here.

-11-

Dr. Waksberg and the Corporation filed litigation in state court against various professionals, alleging causes of action for fraud, negligence, breach of fiduciary duty, breach of contract, etc. The Trustee removed the state court litigation to the bankruptcy court and ultimately resolved all of the asserted claims.

Two efforts were made to resolve globally the Exemption Objection, the Ida Claim and other disputes between Dr. Waksberg and the Trustee through the use of mediation conducted by retired bankruptcy judges. Although the first mediation achieved a resolution, Dr. Waksberg later withdrew his agreement.

Ultimately, the Compromise Agreement was finalized and presented to the bankruptcy court for approval.[12]

6. Substantive Consolidation Motion

Five days after filing the Compromise Motion, the Trustee filed a motion ("Consolidation Motion") seeking to consolidate the two bankruptcy estates substantively. The Trustee asserted in the Consolidation Motion that by consolidating the two bankruptcy cases, "any uncertainty regarding allocation of the Transamerica settlement proceeds will be eliminated." Further, the Trustee alleged that the assets and the liabilities of each bankruptcy estate were "virtually identical."

In his declaration in support of the Compromise Motion, the

---

[12] Notably, the Compromise Agreement explicitly provides that, after the compromise is approved, with limited exceptions, Dr. Waksberg and Ida no longer have standing to oppose the Trustee's actions in the bankruptcy cases. This language is not unlike vexatious litigant orders we have on occasion seen trustees request.

-12-

Trustee stated he had determined that the assets of the two debtors were substantially commingled and intertwined. He further stated that between them, the debtors had commingled and transferred funds with no apparent corporate formalities or repayment schedule such that it was impossible to determine whether one debtor might be a creditor of the other. He asserted that the Transamerica settlement proceeds were awarded "jointly and severally" to the two debtors. He emphasized that the related cases "share an unusual element where the majority of their respective Bankruptcy Estates consist of the litigation award recoveries that are joint and several as between the Debtors."

The Trustee averred that the schedules and statements of financial affairs in the two cases reflected that the Schedule D and F creditors were "virtually identical." He reported that all of the secured claims of attorneys listed on the D schedules of both cases had been resolved through the entry of court orders, each of which provided for partial payment by the Trustee, with the balance allowed as an unsecured claim in both the individual and corporate cases.

To conclude his declaration, the Trustee restated that he had entered a tentative settlement with Dr. Waksberg that would resolve the Exemption Objection, and that granting the Consolidation Motion would eliminate any uncertainty regarding allocation of the Transamerica settlement proceeds. Therefore, approving the Compromise Motion and the Consolidation Motion would facilitate the case closing process.

-13-

7.    The Law Firm's Opposition

In a single document, the Law Firm opposed both the Consolidation Motion and the Compromise Motion. As to the Consolidation Motion, the Law Firm asserted that substantive consolidation of the cases was contrary to case law, and was prejudicial to the Law Firm's right to be paid the balance of its allowed chapter 11 administrative expense claim. The Law Firm opposed the Compromise Motion only to the extent that the trustee intended to reach assets of the Corporation to fund payment to Dr. Waksberg on his claim of personal exemption. The Declaration of Kathleen P. March in support of the opposition includes the following primary assertions: she was advised by the Trustee's counsel that (1) assets of the Corporation were necessary to fund the Compromise Agreement; and (2) substantive consolidation would render the two cases administratively insolvent past the chapter 7 professionals level.

The Law Firm pointed out that the Trustee bore the burden of proving that substantive consolidation is allowable under the circumstances. The Law Firm asserted that it would be contrary to law to consolidate the cases substantively to enable the Trustee to reach corporate assets, otherwise available to claimants against the Corporation, to pay a personal exemption to Dr. Waksberg. The Law Firm contended that the Consolidation Motion contained no evidence establishing that creditors did not rely on the separateness of Dr. Waksberg and the Corporation in extending credit. Nor did the Trustee establish that there was sufficient entanglement of the two debtors' financial affairs that the time and expense necessary to unscramble them threatened

-14-

the realization of net assets to all creditors. The Law Firm asserted that, to the extent there was any commingling, it was done postpetition by the Trustee himself in the payment of attorneys fees. The Law Firm posited that simple math would enable the Trustee to allocate those attorneys fees between the estates.

Finally, The Law Firm asserted that, if the bankruptcy court was inclined to approve the Consolidation Motion, equity required a "carve out" for its previously approved fees.

The Trustee responded to the Law Firm's opposition, pointing out that the Law Firm did not oppose the Compromise Motion on any grounds set forth in Martin v. Kane (In re A & C Props.), 784 F.2d 1377 (9th Cir. 1986). Rather, the sole opposition was that there would not be funds to implement the Compromise Order absent improper consolidation of the cases.

The Trustee argued that if the Law Firm were to prevail in its opposition to the Compromise Motion, he would be forced to litigate the Exemption Objection. In the absence of consolidation, previously paid chapter 11 administrative expenses, and possibly some previously paid chapter 7 administrative expenses, in Dr. Waksberg's case would need to be disgorged. Further, there were no funds in Dr. Waksberg's individual case to fund the Exemption Objection litigation. In addition, the Compromise Agreement settled the Ida Claim, asserted as secured against the Corporation in the amount of $587,000. The Trustee pointed out that Dr. Waksberg filed a claim against the Corporation in the amount of $3,857,244, and consolidation would eliminate claims between the two estates for

-15-

the benefit of all of the creditors.

The Trustee further asserted that he was not bound by the allocation between the Corporation and Dr. Waksberg as set forth in the Transamerica and Skadden Arps settlement agreements. As a consequence, the Law Firm's attempt to allocate 7/11 of the total settlement funds to the Corporation was not dispositive in a determination as to the funds belonging to each estate.

8.    The Bankruptcy Court's Rulings

The bankruptcy court heard arguments on the Compromise Motion and the Consolidation Motion on March 5, 2014. In addressing the Law Firm's contention that the Trustee had not adequately established that creditors did not look to one of the debtors in extending credit, the bankruptcy court made the following findings relevant to the Consolidation Motion:

> We do have a substantial overlap. We've got 48 of the 80 creditors in the individual case are the same creditors as in the corporate case. The bulk of the parties that we've dealt with, that's anybody that's ever come into this court, dealt with the debtor and the corporation indistinguishable.
>
> I do think that this is a case that as of the petition date was an appropriate case for substantive consolidation.

Tr. of March 5, 2014 H'rng at 34:8-16.

The bankruptcy court also focused on the manner in which the Trustee's settlements with all of the attorneys who had asserted liens against the litigation settlement proceeds had been paid. Specifically, each of the disputed attorney liens was resolved by: (1) a partial payment from the funds in the Interpleader Action, without an allocation as to which debtor was paying the lien claim; and (2) an unsecured claim allowed in both cases.

-16-

The bankruptcy court also noted that the Law Firm's objection to the Compromise Motion related only to the intended use of the Corporation's assets to fund the Compromise Agreement, not to approval of the terms of the Compromise Agreement itself. However, at the Hearing, The Law Firm's counsel asserted that the Compromise Motion only was noticed in Dr. Waksberg's individual case and not in the Corporation's case. The Trustee's counsel responded that he believed all creditors in both cases had been provided with notice of the Compromise Motion. No evidence on this point was introduced at the Hearing.

The bankruptcy court granted the Consolidation Motion as well as the Compromise Motion. These appeals followed.

## II. JURISDICTION

The bankruptcy court had jurisdiction under 28 U.S.C. §§ 1334 and 157(b)(2)(A), (B) and (O). We have jurisdiction under 28 U.S.C. § 158.

## III. ISSUES

Whether the bankruptcy court abused its discretion when it approved the Compromise Agreement.

Whether the bankruptcy court erred when it entered the Consolidation Order.

## IV. STANDARDS OF REVIEW

A bankruptcy court's decision to approve a compromise settlement is reviewed for abuse of discretion. Martin v. Kane (In re A & C Props.), 784 F.2d 1377, 1380 (9th Cir.), cert. denied, 479 U.S. 854 (1986); Goodwin v. Mickey Thompson Entertainment Group, Inc. (In re Mickey Thompson Entertainment Group, Inc.), 292 B.R. 415, 420 (9th Cir. BAP 2003). A

-17-

bankruptcy court abuses its discretion if it applies an incorrect legal standard or misapplies the correct legal standard, or if its fact findings are illogical, implausible or without support from evidence in the record. TrafficSchool.com v. Edriver Inc., 653 F.3d 820, 832 (9th Cir. 2011).

A substantive consolidation decision presents a mixed question of law and fact that we review de novo. In re Bonham, 229 F.3d at 763. A mixed question exists when the relevant facts are established, the legal standard is clear, and the issue is whether the facts satisfy the legal standard. Wechsler v. Macke Int'l Trade, Inc. (In re Macke Int'l Trade, Inc.), 370 B.R. 236, 245 (9th Cir. BAP 2007).

De novo review requires that we consider a matter anew, as if no decision had been made previously. United States v. Silverman, 861 F.2d 571, 576 (9th Cir. 1988); B-Real, LLC v. Chaussee (In re Chaussee), 399 B.R. 225, 229 (9th Cir. BAP 2008).

We may affirm the decision of the bankruptcy court on any basis supported by the record. Shanks v. Dressel, 540 F.3d 1082, 1086 (9th Cir. 2008).

## V. DISCUSSION

A. Introduction

Unfortunately, this case represents an unhappy tribute to the ability of a difficult and litigious debtor to turn a bankruptcy case into a morass from which no objectively desirable outcomes are possible. Faced with this mess, the bankruptcy court followed the lead of the Trustee in seeking to cut losses and end the pain of metastasizing litigation. We conclude in these circumstances that the bankruptcy court did not abuse its

discretion in approving the Compromise Agreement, consistent with the Ninth Circuit's A & C Props. standards, but we also conclude that it was inappropriate for the bankruptcy court to approve substantive consolidation under In re Bonham over the material substantive objections of an interested party. Our reasoning follows:

B. Approval of the Compromise Agreement

Rule 9019(a) authorizes the bankruptcy court to approve a compromise or settlement on motion of the chapter 7 trustee after notice and a hearing. The bankruptcy court must inquire into all "factors relevant to a full and fair assessment of the wisdom of the proposed compromise." Protective Comm. For Indep. Stockholders of TMT Trailer Ferry, Inc. v. Anderson, 390 U.S. 414, 424 (1968). In other words, in order to approve a compromise settlement, the bankruptcy court "must find that the compromise is fair and equitable." In re A & C Props., 784 F.2d at 1381. And the Trustee, as the party advocating approval of the compromise, bears "the burden of persuading the bankruptcy court that the compromise is fair and equitable and should be approved." Id. However, bankruptcy courts have broad discretion in considering approval of proposed settlements because they are "uniquely situated to consider the equities and reasonableness [of such settlements] . . . ." United States v. Alaska Nat'l Bank (In re Walsh Constr., Inc.), 669 F.2d 1325, 1328 (9th Cir. 1982). "The purpose of a compromise agreement is to allow the trustee and the creditors to avoid the expenses and burdens associated with litigating sharply contested and dubious claims." In re A & C Props., 784 F.2d at 1380.

-19-

In determining whether the standards for approval of a compromise settlement have been met, the bankruptcy court must consider the following four factors:

(a) The probability of success in the litigation; (b) the difficulties, if any, to be encountered in the matter of collection; (c) the complexity of the litigation involved, and the expense, inconvenience and delay necessarily attending it; [and] (d) the paramount interest of the creditors and a proper deference to their reasonable views in the premises.

Id., citing Flight Transp. Corp. Securities Litigation, 790 F.2d 1128, 1135 (8th Cir. 1984), cert. denied, 105 S. Ct. 1169 (1985). See Marlow v. Zamora (In re Marlow), 2011 WL 3299024 (9th Cir. BAP Feb. 1, 2011) (unpublished).

In this case, the Trustee addressed all four factors at length in the Memorandum of Points and Authorities filed in support of the Compromise Motion, supported by the Trustee's declaration. With respect to the probability of success in litigation, the Trustee and his counsel focused on Dr. Waksberg's exemption claims. The two primary issues to be determined were 1) whether Dr. Waksberg was entitled to any exemptions at all, and 2) if so, the amount of exemptions that should be allowed. In light of the bankruptcy court's determination that the lateness of Dr's Waksberg's making the subject exemption claims was not dispositive, the parties had focused on the present value of "subsistence" versus "lifestyle maintenance" for Dr. Waksberg and his aged and infirm mother. In his amended Schedule C, Dr. Waksberg had claimed $3,600,000 as exempt but subsequently had sought much more—between $4,223,543 and $4,631,402 after taxes. The upper end of Dr. Waksberg's exemption claims exceeded the balance of funds the bankruptcy estates had on hand. The

-20-

Trustee's experts had opinions supporting amounts varying from $170,190 to $776,143. However, the Trustee could not assume that the bankruptcy court would agree with his experts and discount entirely the expert testimony that Dr. Waksberg was prepared to offer. The settlement amount of $1,600,000 was more than $2,000,000 less than Dr. Waksberg had claimed in his most recently amended Schedule C and well more than $3,000,000 less than Dr. Waksberg's high end claims.

Wrapped up in the settlement was resolution of Ida Waksberg's alleged secured claims against both Dr. Waksberg individually and the Corporation. We note that the record reflects that Ida Waksberg never produced any documentation that her claims ever attached or were perfected. However, at oral argument, counsel for the Trustee noted that Ida Waksberg, age 98, had been a feisty presence in some of the proceedings before the bankruptcy court. The settlement amount appears to represent a compromise amount primarily (if not entirely) relating to the risks associated with litigating Dr. Waksberg's exemption claims. As to Ida Waksberg's claims, the Trustee appears to have agreed to give her the sleeves off his vest. If the Trustee needed to provide that the settlement amount was payable jointly to Dr. Waksberg and his mother to reach the Compromise Agreement and thus clothe the nakedness of the absence of any documents to evidence Ida Waksberg's alleged secured claims without incurring additional settlement costs, we conclude that so agreeing was a reasonable exercise of the Trustee's business judgment.

With respect to potential difficulties in collection, the

Trustee admitted that since he was in possession of the balance of funds from the Transamerica Settlement and the Skadden Arps Settlement, he was not really concerned with collection issues. However, he noted that in the event the bankruptcy court awarded Dr. Waksberg more than the balance of funds held by the bankruptcy estates, such a determination could have costly adverse implications for creditors and other parties that already had received distributions from the estates.

With regard to the complexity of open litigation issues and the expense, inconvenience and delay necessarily attending their resolution, the Trustee noted that prosecution to date of his objections to Dr. Waksberg's exemption claims and Ida Waksberg's claims already had been very time consuming and extremely costly. Resolving those objections through the evidentiary process would further deplete estate assets and potentially clog the bankruptcy court's docket "for months and perhaps years to come," not even considering appeals (of which, to date, Dr. Waksberg had filed many). The settlement would avoid those potentially very expensive, adverse results.

Finally, as to the interests of creditors, the Trustee argued that approving the Compromise Motion would "avoid further administrative expenses and . . . facilitate the closure of this case." At the Hearing, counsel for the Trustee noted that no prepetition creditor had filed an objection to the Compromise Motion.

In its opposition to the Compromise Motion, the Law Firm did not contest the Trustee's showing as to satisfaction of the In re A & C Props. standards but merely argued that it was not

-22-

proper to pay Dr. Waksberg's personal exemption claims out of Corporation assets, an argument we address in discussing the Consolidation Motion. At the Hearing, the Law Firm further asserted that the Compromise Motion had not been noticed in the Corporation's case, without submitting any supporting evidence. In response, counsel for the Trustee stated, "Notwithstanding Ms. March's comments, I believe that notice was provided to all creditors in both cases."

The bankruptcy court ultimately concluded that the Trustee had satisfied all relevant requirements for approval of the Compromise Agreement and approved the settlement. On the record before us, we perceive no abuse of discretion by the bankruptcy court in approving the Compromise Motion.

C. Substantive Consolidation

Approval of the Consolidation Motion is another matter. It is undisputed that the bankruptcy court's power to order substantive consolidation is part of its general equitable authority. "[C]onsistent with its historical roots, the power of substantive consolidation derives from the bankruptcy court's general equity powers as expressed in section 105 of the Bankruptcy Code." In re Bonham, 229 F.3d at 764. However, as recognized by the Ninth Circuit in In re Bonham, "[t]he primary purpose of substantive consolidation 'is to ensure the equitable treatment of all creditors.'" Id., quoting Union Savings Bank v. Augie/Restivo Baking Co. Ltd. (In re Augie/Restivo Baking Co. Ltd.), 860 F.2d 515, 518 (2d Cir. 1988).

There is no dispute that approval of the Consolidation Motion coupled with approval of the Compromise Agreement will

result in no distribution to creditors in either Dr. Waksberg's individual case or the Corporation's case. Accordingly, in effect, the dispute before us is among Dr. Waksberg and administrative claimants only. If the Consolidation Order is affirmed, under the approved Compromise Agreement, Dr. Waksberg and his mother will receive the settlement amount, and chapter 7 administrative claimants will have their allowed claims paid in part, but chapter 11 administrative claimants with lower priorities, such as the Law Firm, will receive nothing.

Substantive consolidation cases tend to be fact specific (see In re Bonham, 229 F.3d at 764), but it is very unusual to be considering substantive consolidation where creditors will see no direct financial benefit from the consolidation. In In re Bonham, the Ninth Circuit adopted the two-factor Second Circuit test to determine whether substantive consolidation is appropriate:

> (1) whether creditors dealt with the [subject] entities as a single economic unit and did not rely on their separate identity in extending credit; or (2) whether the affairs of the debtor are so entangled that consolidation will benefit all creditors.

In re Bonham, 229 F.3d at 766, quoting Reider v. FDIC (In re Reider), 31 F.3d 1102, 1108 (11th Cir. 1994), in turn citing In re Augie/Restivo Baking Co. Ltd., 860 F.2d at 518.

Since, as noted above, the creditors will receive nothing from substantive consolidation in terms of distributions, we do not see how the second factor in the Bonham test is satisfied. As to the first factor, while many creditors in the two bankruptcy cases are the same (48 based on the math as discussed by the Law Firm's counsel and the bankruptcy court at the

-24-

hearing), the creditor bodies are not coextensive.[13] The bankruptcy court ultimately found that, "[t]he bulk of the parties that we've dealt with, that anybody that's ever come into this Court, dealt with [Dr. Waksberg] and the [Corporation] indistinguishably." So, the first Bonham factor arguably supported substantive consolidation.

However, as noted in Bonham, 229 F.3d at 767, substantive consolidation is a remedy to be used "sparingly," and if it cannot be applied equitably, should not be applied at all. The Law Firm did not rely on Dr. Waksberg's credit in seeking employment as counsel to the Committee in the Corporation's chapter 11 case. As so employed, it had no right to make a call on the assets of Dr. Waksberg's individual estate to pay its allowed fees. Yet, if the estates are substantively consolidated, the Law Firm will not receive the balance of its finally approved fee award (which, in the absence of substantive consolidation, would be paid) in order to allow for payment of Dr. Waksberg's compromise exemption claim in part out of Corporation assets that otherwise would not be subject to Dr. Waksberg's personal exemption claims as a matter of law. That result is not equitable and does not support substantive consolidation in this case in the face of the Law Firm's opposition.

---

[13] At the Hearing, the Law Firm's counsel reported after reviewing the claims registers that 32 proofs of claim filed in Dr. Waksberg's individual case were not duplicated in the Corporation's case, and 16 proofs of claim filed in the Corporation's case were not also filed in the individual case.

-25-

## VI.  CONCLUSION

For the foregoing reasons, we AFFIRM the bankruptcy court's approval of the Compromise Motion, but VACATE the Consolidation Order and REMAND to the bankruptcy court for further proceedings.